244 P.3d 916 (2010)
239 Or. App. 576
In the Matter of D.R., Alleged to be a Mentally Ill Person.
STATE of Oregon, Respondent,
v.
D.R., Appellant.
090666080; A142708.
Court of Appeals of Oregon.
Submitted September 28, 2010.
Decided December 15, 2010.
*917 Rebecca Carter filed the brief for appellant.
John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Karla H. Ferrall, Assistant Attorney General, filed the brief for respondent.
Before LANDAU, Presiding Judge, and ORTEGA, Judge, and SERCOMBE, Judge.
SERCOMBE, J.
Appellant seeks reversal of an order adjudicating her to be mentally ill and committing her to the Oregon Health Authority under ORS 426.130(1)(b)(C).[1] Appellant contends that the state failed to prove by clear and convincing evidence that she was a danger to herself. ORS 426.005(1)(e).[2] Appellant also argues that the evidence established that she was amenable to voluntary treatment and therefore commitment was inappropriate. ORS 426.130(1)(b)(A). Because the facts, as found by the trial court, were sufficient to establish that appellant was a danger to herself, we affirm the judgment of commitment.
Although historically civil commitment orders have been reviewed de novo, we no longer review those orders under that standard. ORS 19.415.[3] Instead, we review civil *918 commitment orders de novo only if we exercise our discretion to do so under ORS 19.415(3)(b).[4] ORAP 5.40, the rule of appellate procedure concerning the exercise of our discretion to review a case de novo, requires an appellant to state the reasons why de novo review is appropriate in his or her case. Because appellant did not specify the grounds that make de novo review appropriate in this case, we decline to exercise our discretion to review this case under that standard.
We review the trial court's legal conclusions for errors of law, but are bound by its findings of historical fact unless there is no evidence to support them. See State v. S.T.S., 236 Or.App. 646, 654-55, 238 P.3d 53 (2010) (applying that standard of review to a juvenile dependency judgment where the court declined to exercise de novo review under ORS 19.415); DHS v. Three Affiliated Tribes of Fort Berthold, 236 Or.App. 535, 538-41, 552, 238 P.3d 40 (2010) (same); Dept. of Human Services v. C. Z., 236 Or.App. 436, 442, 236 P.3d 791 (2010) (same). "Where findings on disputed issues of fact are not made but there is evidence supporting more than one possible factual conclusion, we presume that the [trial] court decided the facts consistently with its ultimate legal conclusion." C. Z., 236 Or.App. at 442, 236 P.3d 791. We state the facts, then, consistently with the trial court's express and implied findings.
Appellant was hospitalized based on the events of a single day. On the morning of that day, as her son-in-law, Swanson, was driving home, he encountered appellant crossing a busy four-lane street with her head down. She was not walking in a crosswalk; Swanson and another driver had to stop abruptly to let her cross. Swanson stopped his car beside appellant, and she told him that her car had run out of gas. Appellant asked Swanson to accompany her to a nearby gas station.
At the gas station, appellant misidentified another white car as her own. When Swanson informed appellant that the vehicle was not her car, she confronted the gas station attendant, asking why he had towed her car. Swanson then located appellant's car a block and a half down the street. Appellant and Swanson put gas in the car, and each went about their day.
Later that afternoon, Swanson received a phone call from a church pastor and family friend who was concerned about appellant. Swanson drove to the church and met appellant there. Her speech and behavior were frenetic and disorganized. Swanson testified, "She was just all over with conversations and movements, pleasant but all over the place."
Appellant told Swanson that she needed to drive to an automotive store to purchase some parts for her car. Swanson agreed to follow her in his own car. Shortly thereafter, appellant ran a red light and stopped in a merging lane for a period of time before proceeding. Other cars were forced to merge around her. At a subsequent right turn, appellant cut off an approaching car and later ran three stop signs, although she observed the speed limit and her driving was otherwise unremarkable. At the second of those stop signs, appellant went through the intersection a few seconds ahead of Swanson. When Swanson stopped at the sign, he observed an approaching semi-truck a few car lengths down the road.
Eventually appellant parked her car near a daycare facility. Swanson parked across the street to observe. Appellant briefly entered the facility and came back out and began uprooting plants in a flower bed near an adjacent apartment building. The property manager of the apartment building arrived and had a heated exchange of words with appellant. Appellant walked away from the apartment manager. Swanson called the police, who found appellant a short distance away. Her commitment to a local hospital followed, as did the hearing in this case.
*919 At the time of the hearing, appellant had difficulty focusing, was disorganized, and exhibited poor insight into her mental condition. The record showed that she was inconsistent in taking her medications. Both examiners concluded that appellant suffered from bipolar disorder, and one examiner opined that commitment was appropriate. The examiner who advocated commitment explained:
"Because her thoughts are so scattered and she's so distracted, she can't focus on any given situation. She's unable to recognize that it's dangerous to cross a four-lane street looking down * * *.
"* * * * *
"And given her inability to even answer a question today without extreme redirection I can't see her on the road in any degree of safety. And I don't think she would take Tri-Met. She did say, `Oh, I could take Tri-Met.' But she's got many places to go and a lot of things to do, and she has a car. So I felt that because of that, because she doesn't recognize her she's impaired enough that she can't comprehend her disorganization. And I don't see her as capable of making adequate judgments for the road."
The trial court found that the state had proved by clear and convincing evidence that appellant suffered from a mental disorder and that that mental disorder made her a danger to herself. The court further concluded that appellant was not able to follow through on voluntary treatment due to her disorganization. The court explained its rationale for commitment:
"She was walking in traffic without paying attention to what was going on around her. Now, maybe that in and of itself is not a basis for commitment.
"I'm very concerned about the driving. I'm very, very concerned about the driving. I absolutely believe her son-in-law's testimony that she drove through red lights and stop signs. She absolutely does not acknowledge doing it. And I think the basis of her distractibility, her inability to focus, her tangential thoughts all fit into her behavior on that day. And although I see some improvement in it, I don't see it gone.
"* * * * *
"And I have been trying to figure out a way to not have her be in her car. But it's her car, and if she demands the keys she has a right to the keys. And there's gas in it. And I don't see that she is thinking clearly enough to get behind the wheel of a car.
"* * * * *
"I have just grave concerns about her continuing to drive when she continues to be very distracted and disorganized in her thinking and in her surroundings around her.
"I'm not going to necessarily say what I think exactly is going to happen because I think that's asking me to speculate. But I think she is going to get behind the wheel of the car, and I think she is going to drive, and I think that places herself and potentially other people at risk by doing so.
"Whether she walks out in traffic again is part of her destructibility that I cannot * * * predict. But I can predict that she's going to continue to act in a disorganized and destructive manner. And, therefore, I will do the commitment based on danger to self. I'm going to do it for a very much shorter period of time though because I don't think [appellant] need[s] to be in a hospital a really long time. And so it's going to be for a period not to exceed 60 days."
On appeal, appellant does not dispute that she suffered from a mental disorder. Instead, appellant argues that she is not a danger to herself "because of [that] mental disorder" under ORS 426.005(1)(e). Specifically, she argues that there was no proven nexus between her mental disorder and her driving and that there was insufficient proof of a pattern of behavior on which to base a conclusion of likely future harm. For the following reasons, we conclude that a rational trier of fact could have found that there was clear and convincing evidence that appellant *920 was a danger to herself.[5]Cf. State v. Cervantes, 319 Or. 121, 125, 873 P.2d 316 (1994) (stating an analogous standard of review for factual sufficiency in criminal cases).
Given the serious deprivation of liberty and social stigma that are attendant to a civil commitment, and the fact that such a preventive confinement is predicated on a prediction of future behavior, our cases have articulated certain minimum evidentiary standards for commitment. See State v. Lott, 202 Or.App. 329, 354, 122 P.3d 97 (2005), rev den, 340 Or. 308, 132 P.3d 28 (2006) (Edmonds, P.J., dissenting) ("The tension between the protection of personal liberties and the provision of medical help to persons with mental disorders can be relieved if courts strictly adhere to the statutory requirements for involuntary commitment and ensure that there is an evidentiary basis that satisfies each of those requirements."); State v. Simon, 180 Or.App. 255, 263, 42 P.3d 374 (2002) ("Predicting future human behavior is an inherently speculative endeavor."). In order to establish that appellant is a "danger to self," the state must prove that appellant's mental disorder has resulted in harm to herself or has created situations likely to result in harm. State v. Judd, 206 Or.App. 146, 152, 135 P.3d 397 (2006). The threat of harm need not be immediate, but it must be real and exist in the near future. Id. We assess the legal adequacy of the evidence under that standard based on appellant's condition at the time of the hearing as understood in the context of her past behavior. State v. M. R., 225 Or.App. 569, 574, 202 P.3d 221 (2009).
Although we have recognized the limited utility of fact-matching in this context, "our cases identify several important principles that inform our analysis." State v. Olsen, 208 Or.App. 686, 691, 145 P.3d 350 (2006). "`[A] person can be deemed dangerous to self if he or she has established a pattern in the past of taking certain actions that lead to self-destructive conduct, and then he or she begins to follow the pattern again.'" Id. (quoting State v. Roberts, 183 Or.App. 520, 524, 52 P.3d 1123 (2002)). However, by itself, an isolated incident, speculative threat, or mere apprehension of danger is insufficient to establish a danger to self. See, e.g., State v. Miller, 198 Or.App. 153, 158, 107 P.3d 683 (2005) (past threats coupled with violent acts may be sufficient to establish dangerousness if "there is no indication that such violence is an isolated occurrence" (quotation marks omitted)); State v. Ayala, 164 Or.App. 399, 404, 991 P.2d 1100 (1999) ("Apprehensions, speculations and conjecture are not sufficient to prove a need for mental commitment."). Moreover, "a mere recitation of past acts, in the absence of a showing that such clearly forms the foundation for a prediction of future dangerousness, cannot serve as the basis for a finding that one is a mentally ill person pursuant to ORS 426.005(2)." State v. Lucas, 31 Or.App. 947, 950, 571 P.2d 1275 (1977). "[E]ven behavior that may be inherently risky [ ] is not necessarily sufficient to warrant commitment." Olsen, 208 Or.App. at 691, 145 P.3d 350.
In Olsen, we held that the appellant's poor judgment, which included a past tendency to walk into other people's homes, was insufficient to establish a danger to self:
"[E]vidence of an established pattern of that type of behavior, coupled with evidence that it is likely to continue, might be sufficient to justify involuntary commitment. But the state established no such pattern in this case. * * * The record * * * does not reveal how often appellant engaged in that behavior, or under what circumstances it occurred, or whether that behavior ever resulted in actual physical harm. Nor is there any evidence that appellant is likely to repeat that behavior in the future."
Id. at 693, 145 P.3d 350 (citations omitted).
Similarly, in Roberts, we held that evidence that the appellant did not take her medications and wandered in the streets in a confused state of mind did not demonstrate a likelihood that she was a danger to herself where that behavior had never led to injury. We elaborated, "[A]lthough appellant evidently *921 wanders the streets frequently, the record contains no indication that this activity has ever led to injury. Thus, this case does not present a situation in which authorities interrupted a sequence of events that has, in the past, led to disaster." Roberts, 183 Or.App. at 525, 52 P.3d 1123.
Other cases, too, have suggested that mere carelessness on the part of the appellant, without more, is not enough to establish a future likelihood of harm. See, e.g., State v. Hambleton, 202 Or.App. 526, 534, 123 P.3d 370 (2005) (recent episode of swimming nude in 40 degree weather is insufficient to support commitment where there was no evidence that the appellant had engaged in that conduct before, had suffered any harm, or was likely to suffer any harm if she engaged in that conduct in the future); State v. Webb, 186 Or.App. 404, 409-10, 63 P.3d 1258 (2003) (pattern of riding a bicycle nude through unsafe neighborhoods is insufficient to support commitment); State v. Siebold, 100 Or.App. 365, 366, 786 P.2d 219 (1990) (evidence that the appellant's mental disorder caused distraction and led to a single occurrence in which he was involved in an automobile accident was insufficient to establish a danger to self); State v. Fletcher, 60 Or.App. 623, 625-27, 654 P.2d 1121 (1982) (evidence that the appellant drove too fast and darted in and out of traffic, at times drank too much, slept irregularly, refused medications, and exhibited impaired judgment was insufficient to establish that he was a danger to himself).
However, we have held that a past violent act established a likelihood of future dangerousness where there was evidence that the appellant, at the time of the hearing, was still suffering from the mental disorder that caused her to engage in the threatening behavior and the examiners testified that she was likely to repeat that behavior in the absence of intervention. Lott, 202 Or.App. at 335-36, 122 P.3d 97. In Lott, the appellant's paranoid fears had caused her to discharge her gun into the wall of an adjacent apartment. Id. at 331, 122 P.3d 97. At the time of the hearing, the examiners testified that she still harbored the same paranoid fears and that she lacked insight into the dangerousness of her conduct. Id. at 331-32, 122 P.3d 97. Thus, because "both experts were able to predict that appellant would again become violent," we concluded that the evidence was sufficient to establish that she was a danger to others. Id. at 335-36, 122 P.3d 97.
Here, appellant exhibited impaired judgment, scattered thoughts, and somewhat disorganized, impulsive behavior. Her history demonstrated that she was inconsistent in taking medications. On the day of her admittance to the hospital, she had crossed a street with her head down, causing two cars to halt, and had run a stop light and three stop signs. Although there was no evidence that appellant had ever engaged in similar conduct in the past and no harmful consequences resulted from her behavior, her conduct was inherently risky and did create a threat of harm to herself. That conduct alone may not be sufficient to support commitment. Nonetheless, the evidence, as a whole, may be sufficient to support commitment if it shows appellant is likely to repeat that conduct in the near future.
Appellant's inability to focus and impaired judgment caused her to cross the street in traffic and drive in a risky manner. It was that unawareness of her surroundings that was the hallmark of her behavior throughout the day. At the time of the commitment proceeding, one examiner testified and the trial judge found that she was still suffering from the same deficiencies in attention and judgment and that she was therefore likely to repeat her conduct in the near future. Thus, given appellant's past conduct, coupled with her condition at the time of the hearing, we conclude that a rational trier of fact could have found that there was clear and convincing evidence that appellant was a danger to herself.
Affirmed.
NOTES
[1] ORS 426.130(1) provides, in part:

"After hearing all of the evidence, and reviewing the findings of the examining persons, the court shall determine whether the person is mentally ill. If, in the opinion of the court, the person is:
"* * * * *
"(b) Mentally ill based upon clear and convincing evidence, the court:
"(A) Shall order the release of the individual and dismiss the case if:
"(i) The mentally ill person is willing and able to participate in treatment on a voluntary basis; and
"(ii) The court finds that the person will probably do so.
"* * * * *
"(C) May order commitment of the individual to the Oregon Health Authority for treatment if, in the opinion of the court, subparagraph (A) or (B) of this paragraph is not in the best interest of the mentally ill person."
[2] ORS 426.005(1)(e) provides, in part:

"`Mentally ill person' means a person who, because of a mental disorder, is one or more of the following:
"(A) Dangerous to self or others."
[3] ORS 19.415(3) (2007) provided that, in equitable cases, "the Court of Appeals shall try the cause anew upon the record." That provision was amended in 2009, making de novo review discretionary for notices of appeal filed after June 4, 2009. See Or. Laws 2009, ch. 231, §§ 2, 3. Here, appellant's notice of appeal was filed after the effective date of those amendments. ORS 19.415(3) now provides:

"Upon an appeal in an equitable action or proceeding, review by the Court of Appeals shall be as follows:
"* * * * *
"(b) Upon an appeal in an equitable action or proceeding other than an appeal from a judgment in a proceeding for the termination of parental rights, the Court of Appeals, acting in its sole discretion, may try the cause anew upon the record or make one or more factual findings anew upon the record."
[4] ORAP 5.40(8)(a) provides:

"In those proceedings in which the Court of Appeals has discretion to try the cause anew on the record and the appellant seeks to have the court exercise that discretion, the appellant shall concisely state the reasons why the court should do so."
[5] We conclude that appellant's other assignment of errorthat there was sufficient evidence establishing that she was able and willing to participate in treatment on a voluntary basisis not well grounded, and thus we reject it without further discussion.