Submitted December 22, 2010, affirmed April 27, 2011

In the Matter of J. D. S.,
Alleged to be a Mentally Ill Person.

STATE OF OREGON,
*Respondent,*

*v.*

J. D. S.,
*Appellant.*

Lane County Circuit Court
300923161; A143867

263 P3d 1017

George W. Kelly filed the brief for appellant.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Justice J. Rillera, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Landau, Judge pro tempore.

ORTEGA, P. J.

## ORTEGA, P. J.

Appellant seeks reversal of the trial court's judgment committing him as a mentally ill person for a period not to exceed 180 days. ORS 426.130. He contends that the record does not establish, by clear and convincing evidence, that he was a danger to himself or others. *See* ORS 426.005(1). The state responds that the trial court correctly concluded that "appellant suffers from a mental disorder that causes him to be a danger to himself and others." Because we conclude that, based on the record in this case, a reasonable factfinder could find at a minimum, by clear and convincing evidence, that appellant was a danger to himself, we affirm and do not address whether appellant was a danger to others.

In civil commitment cases, this court, "acting in its sole discretion, may try the cause anew upon the record[.]" ORS 19.415(3)(b). However, we exercise our discretion to review *de novo* "only in exceptional cases." ORAP 5.40(8)(c). Furthermore, in cases where an appellant "seeks to have the court exercise that discretion," the appellant is required to "concisely state the reasons why the court should do so." ORAP 5.40(8)(a). Here, although appellant asks us to review *de novo*, he has failed to identify reasons why we should do so. Accordingly, and because we do not view this as an exceptional case, we decline to exercise our discretion to review *de novo* and, instead, are bound by the trial court's findings of historical fact that are supported by any evidence in the record. *State v. B. B.*, 240 Or App 75, 77, 245 P3d 697 (2010). In this case, the trial court did not make express factual findings. However, it did conclude that the state had shown appellant to be a danger to himself and others by clear and convincing evidence.

■■ The "clear and convincing" evidence requirement is the standard that governs the state's burden of proof in this case, and is the degree of certainty that must exist in the mind of the factfinder. *Gritzbaugh Main Street Prop. v. Greyhound Lines*, 205 Or App 640, 648, 135 P3d 345, *adh'd to on recons*, 207 Or App 628, 142 P3d 514 (2006), *rev den*, 342 Or 299 (2007) (discussing the clear and convincing evidence standard in the context of remedial contempt proceedings). On appeal, we do not reweigh the evidence to determine

anew whether there is clear and convincing evidence that appellant is a danger to himself or others. *Id.*; *accord Keller and Holdner*, 232 Or App 341, 344, 222 P3d 1111 (2009); *see also State v. Cunningham*, 320 Or 47, 63, 880 P2d 440 (1994), *cert den*, 514 US 1005 (1995) (in criminal cases, the appellate court does not determine whether it believes that the defendant is guilty beyond a reasonable doubt, but whether the evidence is sufficient for a jury to so find). Instead, we review the sufficiency of the evidence by viewing the evidence in the light most favorable to the state to determine whether any rational trier of fact, accepting reasonable inferences and credibility choices, could have found appellant to be a danger to himself or others by clear and convincing evidence. *State v. D. R.*, 239 Or App 576, 582, 244 P3d 916 (2010) (evaluating whether a "rational trier of fact could have found that there was clear and convincing evidence that appellant was a danger to herself"); *see Oberg v. Honda Motor Co.*, 320 Or 544, 553, 888 P2d 8 (1995), *cert den*, 517 US 1219 (1996) (reviewing a punitive damages award to determine if the plaintiff presented evidence that permitted a factfinder to conclude, by clear and convincing evidence, that the defendants acted with "wanton disregard for the health and safety of others"); *Cunningham*, 320 Or at 63 (evaluating the sufficiency of the evidence in a criminal case by examining the evidence in the light most favorable to the state to determine whether a rational factfinder could have found the necessary elements beyond a reasonable doubt); *see also Onita Pacific Corp. v. Trustees of Bronson*, 122 Or App 452, 457, 858 P2d 453, *rev den*, 318 Or 170 (1993) ("It is not our job to decide whether the evidence is clear and convincing, but to decide whether a [factfinder] could find that it is."). Thus, here, in the absence of express factual findings by the trial court, but where the court found clear and convincing evidence that appellant was a danger to himself and others, we state the facts in the light most favorable to the state and consistently with the trial court's implicit findings in support of its conclusion. *See B. B.*, 240 Or App at 82 (reviewing the evidence in the light most favorable to the state to determine whether the evidence was legally sufficient to support a determination that the appellant was a danger to himself); *D. R.*, 239 Or App at 579 (examining the facts "consistently with the trial court's express and implied findings").

Appellant has bipolar disorder and, at the time of the hearing, was in a manic phase. He was "decompensated," had little or no insight into his condition, and had refused medication.

In an earlier episode in May 2008, 17 months before the hearing in this matter, appellant jumped off of a two-story building in response to auditory hallucinations, "believing that he would not be injured." As a result, he suffered fractures of his lumbar spine, which could have resulted in permanent paralysis.

A "second episode of psychosis" consisting of a several-week period of deterioration led to the commitment proceeding at issue here. Late one night, appellant and his brother Robert were driving south on I-5. Robert fell asleep in the passenger's seat after appellant volunteered to take over driving. Approximately 10 minutes after he began driving, appellant took his hands off the steering wheel of the car and allowed the car to drift off of the road, driving over the rumble strip on the side of the freeway. He testified that he did this, in part, to wake up Robert so that he would steer the car. Appellant also informed a social worker that he had been "responding to instructions from his akito [sic] master" and told the treating psychologist that he "was somehow testing his brother, the trust[.]"

A similar incident occurred two days later, while appellant was driving in town with Robert in the passenger seat of the car. Noticing that the car appeared to be heading for the curb, Robert reached over and grabbed the steering wheel. Appellant allowed the car to proceed approximately another block without resuming steering, telling his brother to "work the steering wheel" while appellant worked the pedals. As they approached an intersection, Robert yelled at appellant to "stop that and to take ahold of the wheel[,]" which appellant did.

That same day while in the car, appellant became angry at Robert over a $10 bet that he wanted Robert to make with him. When the two got out of the car, appellant "had become quite agitated" and threatening. He approached Robert and threatened to "knock [his] block off[,]" prompting Robert to flee to the house to avoid being hit. Later that day,

appellant was admitted to the hospital via the emergency room.

Appellant's behavior in the emergency room led to him being placed on a hold. He would not cooperate with admission staff and was "extremely sarcastic and hostile and belittling" when psychiatric personnel engaged with him. According to Dr. Sanchez, a psychiatrist who had been treating appellant while he was in the hospital, as a result of his "responding to this disorder" and his lack of judgment, appellant was a danger to himself and others. Furthermore, according to Sanchez, although manic patients can present reasonably well in a controlled environment such as a hospital, there is reason to be concerned that "out of the hospital, with all the stimulation and the other things, they can significantly escalate[.]" In addition, appellant had no insight into his condition and refused medication, and staff had been "unable to manage him" on the open unit in the hospital. Ultimately, the trial court found that appellant suffers from a mental disorder, is a danger to himself and others, and would not cooperate with or benefit from a program of voluntary treatment. As such, the court committed appellant to the Mental Health Division for a period not to exceed 180 days.

On appeal, appellant does not appear to contest that he has a mental disorder. Instead, he contends that the trial court's determination that he was a danger to himself or others is not supported by legally sufficient evidence. Addressing only whether he is a danger to himself, we disagree.

"To establish that a person is '[d]angerous to self,' the state must present evidence that the person's 'mental disorder would cause him or her to engage in behavior that is likely to result in physical harm to himself or herself in the near term.' *State v. Olsen*, 208 Or App 686, 691, 145 P3d 350 (2006). That requires evidence that the person's mental disorder 'has resulted in harm or created situations likely to result in harm' in the 'near future.' *Id.* (internal quotation marks omitted). Additionally, our cases have established that the threatened 'harm' must, at minimum, involve 'actual physical harm,' *id.* at 693, and that the physical harm must be 'serious,' *State v. North*, 189 Or App 518, 525, 76 P3d 685 (2003)."

*B. B.*, 240 Or App at 82 (brackets in *B. B.*). The "requisite danger to self cannot be based on mere unsubstantiated apprehension or speculation." *Id.* at 84. Viewed in the light most favorable to the state, the evidence in this case is such that a reasonable factfinder could conclude that appellant's mental disorder has resulted in serious physical harm to appellant and created situations likely to result in harm to appellant in the near term and is, thus, legally sufficient to support commitment on the basis of danger to self.

A year-and-a-half before the hearing, appellant's mental disorder caused him to engage in conduct—that is, jumping off the roof of a two-story building in response to hallucinations—that actually resulted in serious physical harm. As a result of that behavior, appellant sustained fractures to his spine which could have permanently paralyzed him. Then, in the weeks immediately preceding the hearing in this matter, defendant's mental condition deteriorated and defendant suffered what the psychiatrist called a "second episode of psychosis," again engaging in behavior that likely would have resulted in serious physical injury had Robert not intervened. Although Robert prevented any actual injury by taking the steering wheel on both occasions that appellant let go of it while driving, appellant's conduct was extremely dangerous and highly likely to result in physical harm. Furthermore, at the time of the hearing, appellant remained in a manic state and was "decompensated." He had no insight into his condition and refused medication; hospital staff had been unable to manage him on the open unit, and the psychiatrist was concerned that appellant's behavior would escalate once out of the controlled hospital environment. In light of that evidence, a rational trier of fact could conclude by clear and convincing evidence that appellant, as a result of his mental disorder, was a danger to himself. Accordingly, the trial court did not err in ordering commitment.

Affirmed.