BALMER, J., concurring.
The court's opinion, which I join without reservation, explains how the "best interest of the child" standard operates in termination proceedings and carefully applies that standard to the facts of this case. I write separately to make two observations about how that opinion should be understood.
First, "this is a close case." Dept. of Human Services v. T. M. D. , 365 Or. 143, 166, 442 P.3d 1100 (2019). Reasonable judges could look at the same facts and reach a different conclusion, as did a majority of the en banc Court of Appeals. Holding that, on this record, the Department of Human Services failed to carry its burden of showing that **167 termination would be in the best interest of the child, does not create a sea change, or suggest that other courts in other cases have been too quick to find that termination of parental rights is in a child's best interest. *1114 Second, the court's opinion, and the facts discussed therein, should not be taken to set forth a rubric against which juvenile courts must measure the facts of future cases. Courts adjudicating terminations of parental rights should read carefully those sections of the court's opinion explaining that the "best interest of the child" inquiry should proceed without a presumption in favor of adoption and should be focused on the needs of the child to the exclusion of those of the parents. The application of that standard to the facts in this case may serve as an illustration of how those principles should apply. But the court's opinion does not, in applying the standard, announce a list of criteria that must be satisfied before parental rights can be terminated, or a set of factors that, once proved by a parent, can stand as a bar to termination. A court should not, in short, adjudicate what is in a child's best interests by a process of fact-matching between the case at hand and this one. See State v. Sierra , 349 Or. 506, 515 n. 5, 254 P.3d 149 (2010), adh'd to as modified on recons. , 349 Or. 604, 247 P.3d 759 (2011) ("Fact-matching can be a misleading enterprise."); Gardner and Gardner , 212 Or. App. 148, 156, 157 P.3d 320 (2007) (acknowledging that fact-matching is "especially treacherous" in marital dissolution actions); State v. Roberts , 183 Or. App. 520, 524, 52 P.3d 1123 (2002) (recognizing that "fact-matching is not helpful" in the civil commitment context). The application of the "best interest of the child" standard requires careful attention to the subtleties of a given case, and is for that reason inimical to the fact-matching between similar cases that may occasionally prove productive in other legal contexts. A future case with facts resembling those of this case in their broad strokes-involving, say, a parent who has no realistic possibility of being able safely to care for his child, but with whom the child has bonded and maintains limited but positive contact-need not come out the same way, even in the absence of some obvious distinguishing feature. It may be enough to say that those factors, though similar, have a difference balance in that case. **168 Our statutes entrust the weighty decision of whether to terminate parental rights to juvenile courts, subject to de novo review by the Court of Appeals and occasionally by this court. See ORS 19.415(3)(a). The "best interest of the child" standard, made a prerequisite to termination by ORS 419B.500, requires those courts to make an individualized determination, attentive to the child's particular situation and needs. This court has not previously spoken on the application of the "best interest of the child" standard in termination proceedings, but that should not cause our application of that standard in this single case to wield any outsize influence on how juvenile courts approach their work.