414 January 7, 2026 No. 5

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of T. L.,
a Person Alleged to have Mental Illness.

STATE OF OREGON,
*Respondent,*

*v.*

T. L.,
*Appellant.*

Multnomah County Circuit Court
24CC05573; A185653

Monica M. Herranz, Judge.

Argued and submitted October 6, 2025.

Christopher J. O'Connor argued the cause for appellant. Also on the brief was Multnomah Defenders, Inc.

Peenesh Shah, Assistant Attorney General, argued the cause for respondent. Also on the brief was Dan Rayfield, Attorney General, and Benjamin Gutman, Solicitor General.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

AOYAGI, P. J.

Reversed.

**AOYAGI, P. J.**

Appellant appeals a judgment of civil commitment. She raises two assignments of error, both of which turn on the court-issued citation having failed to provide her adequate notice of the specific reasons that she was believed to be mentally ill. *See* ORS 426.090 (requiring the citation issued to "stat[e] the nature of the information filed concerning the person and the specific reasons the person is believed to be a person with mental illness"). We agree that the citation provided inadequate notice and, accordingly, reverse.

The relevant facts are undisputed and mostly procedural. Appellant's sister became concerned that appellant was not eating or drinking. That concern led to appellant being taken to the hospital, where she was placed on an emergency hold on Friday, September 13, 2024. *See* ORS 426.232 (allowing emergency holds of persons believed to be mentally ill when certain criteria are met). The doctor who placed the hold signed a "notification of mental illness" that same day, notifying the community mental health program and the local circuit court of the hold. *See* ORS 426.234(2)(a) (requiring a licensed independent practitioner who initiates a hold to notify the community mental health program director and the circuit court). The notice explained that the doctor believed that appellant was "dangerous to self or others" and in need of emergency care or treatment for schizoaffective disorder, bipolar type. *See* ORS 426.232(1) (limiting emergency holds to persons whom a licensed independent practitioner believes to be dangerous to self or others and in need of emergency care or treatment for mental illness). Regarding appellant being dangerous to self or others, the notice stated:

> "The condition of the above-named person, as set forth in writing below, caused the undersigned to believe that *the above-named person is dangerous to self or others because the person exhibits the following:* (Briefly describe specific examples of thoughts, plans, means, actions, history of dangerousness, or other indicators that support the [licensed independent practitioner's] belief the person is imminently dangerous): **[Patient] has not been eating or drinking for 3 days, off psych medications for a**

**month, brought in by Project Respond for mental decompensation, unable to care for self at this time.**"

(Italics added; boldface in original.)

Upon receiving the doctor's notice, the county community health program was required to conduct "an investigation" to determine whether there was "probable cause to believe" that appellant was "in fact a person with mental illness." ORS 426.070(3)(c). That investigation was performed, and the circuit court received the report. *See* ORS 426.074(1)(b)(A) (requiring the investigation report to be submitted to the court). The court then had to make its own probable cause determination. *See* ORS 426.070(5)(a) ("If the court, following the investigation, concludes that there is probable cause to believe that the person investigated is a person with mental illness, it shall, through the issuance of a citation as provided in ORS 426.090, cause the person to be brought before it at a time and place as it may direct, for a hearing under ORS 426.095 to determine whether the person is a person with mental illness.").

On Thursday, September 19, 2024, the circuit court issued an order for citation, stating that an investigation had been conducted pursuant to ORS 426.070 and that the court had determined that probable cause existed to believe that appellant was a person with mental illness. The court ordered the clerk to issue a citation to appellant stating the nature of the information filed concerning her and the specific reasons she was believed to be mentally ill and notifying her of the time and place of the commitment hearing and certain rights.

The clerk promptly issued a citation to appellant. The citation contained four paragraphs. The first paragraph read:

"You will please take note an investigation has been conducted pursuant to ORS 426.070. Following the investigation, the court concluded there is probable cause to believe you are a mentally ill person. *The nature of the information filed concerning you and the specific reasons you are believed to be mentally ill are described in a copy of the notice of mental illness, attached hereto and by this reference made a part hereof.*"

(Emphasis added.) The remaining paragraphs provided the date, time, and location of the commitment hearing; notified appellant of certain rights; and stated that the citation had been issued and served pursuant to a court order. The citation was served on appellant later the same day, along with the doctor's notice of mental illness, the court's warrant of detention, an advice of rights, and the investigation report.

Appellant's civil commitment hearing was held the next day, Friday, September 20, 2024. At the outset of the hearing, appellant's counsel moved to dismiss based on inadequate notice. Counsel argued, as relevant here, that the citation did not contain the specific reasons that appellant was believed to be a person with mental illness, as required by ORS 426.090. Counsel acknowledged the incorporation of the attached notice of mental illness but argued that the incorporated document was merely a brief statement by the doctor regarding the reasons for the emergency hold, which did not reflect the subsequent investigation or probable-cause determination. The state opposed dismissal, arguing that the citation was adequate and that, in any event, any deficiency was not prejudicial to appellant because she had appointed counsel to explain things to her. The court denied the motion to dismiss. It listed from the court file the documents that had been served on appellant the day before, then stated, "And I do see the issues—the problems that you raised with mentioning the court, but I think that's one of the reasons that we appoint you is to help her with the paperwork based on her condition."

The hearing proceeded. The state presented no evidence that appellant was dangerous to self or others and made no argument that appellant was dangerous to self or others. The hearing focused solely on whether appellant was able to meet her basic personal needs. At the close of the state's case, the court denied a renewed motion to dismiss based on the citation being insufficient. The trial court ultimately found that appellant was unable to meet her basic personal needs due to a mental disorder and, on that basis, committed her to the custody of the Oregon Health Authority for a period not to exceed 180 days.

On appeal, appellant challenges the denial of her motion to dismiss, as well as challenging the commitment itself. She argues that the citation served on her failed to provide adequate notice of the specific reasons that she was believed to be a person with mental illness, including failing to inform her that she was believed to be unable to meet her basic personal needs as a basis for commitment. *See* ORS 426.130(1)(a)(C) (allowing for involuntary commitment of "a person with mental illness"); ORS 426.005(1)(f) (defining "[p] erson with mental illness" to mean "a person who, because of a mental disorder," either (A) is "[d]angerous to self or others," (B) is "[u]nable to provide for basic personal needs that are necessary to avoid serious physical harm in the near future, and is not receiving such care as is necessary to avoid such harm," or (C) has "a chronic mental illness" and meets certain criteria).

The state responds that the citation provided adequate notice to appellant because it incorporated the notice of mental illness, which in turn stated the specific reasons that the doctor believed appellant to be mentally ill. The state acknowledges that the incorporated notice was not ideal, particularly in that it framed the doctor's concern in terms of appellant being "dangerous to self or others"— which is consistent with the requirements for an emergency hold. *See* ORS 426.232(1) (limiting emergency holds to persons whom a licensed independent practitioner believes are dangerous to self or others). The state emphasizes, however, that the doctor did mention that appellant had "not been eating or drinking for 3 days" and that she was "unable to care for self at this time"—even if it was not apparent how that related to her being dangerous to self or others.

The issue before us is ultimately grounded in due process concerns. "[W]hen the state seeks to deprive a person of their liberty through the civil commitment process, the Due Process Clause of the Fourteenth Amendment to the United States Constitution requires, among other things, that the state provide prehearing notice to the person 'of the specific issues the person must meet.'" *State v. B. L. W.*, 335 Or App 639, 640, 560 P3d 766 (2024) (quoting *State v. T. C.*, 327 Or App 558, 562, 536 P3d 591 (2023), *rev den*, 371

Or 825 (2024)). In Oregon, ORS 426.090 "implements that constitutional right," conferring upon the allegedly mentally ill person "a right to prehearing, in-person, written notice of a proposed civil commitment proceeding, including the specific reasons for it." *Id.* (internal quotation marks omitted). ORS 426.090 provides in full:

> "The judge shall issue a citation to the person alleged to have a mental illness *stating the nature of the information filed concerning the person and the specific reasons the person is believed to be a person with mental illness.* The citation shall further contain a notice of the time and place of the commitment hearing, the right to legal counsel, the right to have legal counsel appointed if the person is unable to afford legal counsel, and, if requested, to have legal counsel immediately appointed, the right to subpoena witnesses in behalf of the person to the hearing and other information as the court may direct. The citation shall be served upon the person by delivering a duly certified copy of the original thereof to the person in person prior to the hearing. The person shall have an opportunity to consult with legal counsel prior to being brought before the court."

(Emphasis added.)

There has been a significant amount of appellate litigation in recent years regarding the procedural requirements for civil commitment. *See, e.g.*, *T. C.*, 327 Or App 558 (en banc) (reversing based on lack of personal service of citation and discussing case law). In the process, we have resolved certain issues. For example, we have held that it is permissible for a circuit court to attach a document to a citation and incorporate it by reference, rather than putting all the required information in the citation itself without relying on attachments. *State v. V. L.*, 341 Or App 774, 778, 575 P3d 215 (2025). Under *V. L.*, as appellant acknowledges, the mere fact that a citation relies on an attachment is of no consequence. We treat the incorporated attachment as part of the citation in evaluating the sufficiency of the citation. *Id.* ("The legislature's focus on the *content* of the information provided is consistent with how our court has viewed those statutory procedural requirements." (Emphasis in original.)).

Less settled are the exact parameters of the require-ment in ORS 426.090 that the citation "stat[e] the nature of the information filed concerning the person and the specific reasons the person is believed to be a person with mental illness." A citation that contains *no* information regarding the specific reasons a person is believed to be a person with mental illness is obviously inadequate. *See B. L. W.*, 335 Or App at 641 (reversing commitment where the citation stated only that an investigation had been conducted and that the court had found probable cause to believe that the appellant was mentally ill). It remains an open question, however, how much detail the legislature intended courts to provide—and, more importantly, what the bare minimum is for due process purposes.

This case raises a related question of statutory con-struction. The citation must state "the specific reasons the person *is believed* to be a person with mental illness," ORS 426.090, which prompts the question, believed by whom? The state implicitly takes the position that it was sufficient for the citation to convey the specific reasons that *the doctor who initiated the emergency hold* believed appellant met the requirements for an emergency hold. By contrast, appellant assumes that the citation needed to convey the specific rea-sons that *the circuit court* found probable cause to believe that appellant was a person with mental illness. If ORS 426.090 is referring to the court's specific reasons for issu-ing the citation, rather than the doctor's specific reasons for initiating an emergency hold, or the investigator's specific reasons for finding probable cause, that could bear on the sufficiency of the citation, at least as a statutory matter.

We need not break new ground, however, and decide that issue today. Even disregarding the distinction between the doctor and the court, we conclude that the citation pro-vided insufficient notice because it failed to adequately iden-tify the theory on which appellant was believed to be a per-son with mental illness. As explained in *B. L. W.*, 335 Or App at 641, a minimum requirement for adequate notice is that the citation "reveal a theory of commitment—whether appellant was a danger to herself, a danger to others, or

unable to meet her basic needs"[1]—so that the allegedly mental ill person "know[s] what to expect at the hearing [and] how to defend their liberty."

Here, the doctor's notice incorporated into the citation expressly stated that the doctor believed appellant to be "dangerous to self or others." That is unsurprising insofar as that is the only permissible basis for an emergency hold. ORS 426.232(1). A doctor's notice of mental illness therefore may be particularly ill-suited to being attached to a citation as a means of notifying a person that they are subject to civil commitment on a theory other than danger to self or others. Regardless, we conclude that *this citation* was insufficient to notify appellant that she was believed to be unable to care for her basic personal needs within the meaning of the civil commitment statutes and was subject to commitment on that basis.

It is true, of course, that the doctor's narrative description of why he believed appellant to be dangerous to self or others included statements that appellant had "not been eating or drinking for [three] days" and was "unable to care for self at this time." Food and water are "basic personal needs" for civil commitment purposes. *State v. A. M. W.*, 340 Or App 473, 474, 572 P3d 343 (2025). We are unpersuaded, however, that those two statements by the doctor were sufficient to put appellant on notice that she was believed to be unable to provide for her basic personal needs within the meaning of the civil commitment statutes and needed to be prepared to meet a basic-needs theory at the commitment hearing. Although the doctor included in his notice an unattributed report that appellant had not been eating or drinking for three days, there is no mention of appellant being malnourished or dehydrated upon arrival at the hospital. And the second statement conveys nothing but a vague and summary conclusion that appellant could not "care for" herself "at this time." *See State v. P. D.*, 333 Or

---

[1] We note that, in addition to danger to self or others and inability to meet basic needs, there are also other theories of commitment. *See* ORS 426.005(1)(f)(C) (providing for commitment of certain individuals with "a chronic mental illness" who have had two or more hospitalizations in the prior three years); ORS 426.701 (providing for commitment of "extremely dangerous" individuals with mental illness).

App 738, 742, 553 P3d 1063 (2024) (a person may be committed for inability to meet basic personal needs only if their inability is of such a degree and duration as to put them at "nonspeculative risk of serious physical harm" that "is likely to occur in the near future" (internal quotation marks omitted)).[2] Moreover, those statements were made in the express context of explaining why appellant was believed to be dangerous to self or others, which is a distinctly different theory of commitment.[3]

Accordingly, we conclude that the citation did not adequately state the "specific reasons" that appellant was believed to be a person with mental illness, ORS 426.090, in that it failed to notify appellant that she was believed to be unable to provide for her basic personal needs due to a mental disorder and was subject to commitment on that basis. As previously noted, appellant was civilly committed at the conclusion of the hearing based solely on the basic-needs theory.

Reversed.

---

[2] New civil commitment standards went into effect in July 2025. Or Laws 2025, ch 559, §§ 1 - 68. Appellant was committed in 2024, so the new standards are not at issue in this case. We rely on the law in effect at the time of appellant's commitment.

[3] A person is "dangerous to self" for civil commitment purposes when, due to a mental disorder, a person engages in dangerous activity that risks serious physical harm or death, such as jumping off buildings or running into traffic, with or without suicidal intent. *State v. B. B.*, 240 Or App 75, 82-83, 245 P3d 697 (2010); *see, e.g.*, *State v. L. D.*, 310 Or App 347, 484 P3d 1100 (2021) (affirming commitment where the appellant repeatedly ran into traffic with suicidal intent); *State v. J. D. S.*, 242 Or App 445, 263 P3d 1017 (2011) (affirming commitment where the appellant, without suicidal intent, jumped off a two-story building and twice drove without his hands on the steering wheel). A person is unable to meet basic personal needs for civil commitment purposes when, due to a mental disorder, a person is unable to provide themselves with basic necessities such as food, water, or medical care to a degree that risks serious physical harm or death. *A. M. W.*, 340 Or App at 474. Thus, danger to self tends to involve dangerous acts, while inability to meet basic needs tends to involve dangerous omissions.