No. 251 April 1, 2026 181

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of W. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

K. G.,
*Appellant.*

Douglas County Circuit Court
22JU04250; A185841

Ann Marie Simmons, Judge.

Submitted March 18, 2025.

G. Aron Perez-Selsky and Michael J. Wallace filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Emily N. Snook, Assistant Attorney General, filed the brief for respondent.

Before Aoyagi, Presiding Judge, Egan, Judge, and Joyce, Judge.

EGAN, J.

Affirmed.

**EGAN, J.**

In this juvenile dependency case, mother appeals from and seeks reversal of the juvenile court's order authorizing the Oregon Department of Human Services (ODHS) to remove her child, W, from her physical custody and place him in substitute care.[1] Because W is an enrolled member of the Cow Creek Band of Umpqua Tribe of Indians, the Indian Child Welfare Act (ICWA), 25 USC sections 1901 to 1963 (1978), applies to this case.[2] Mother argues that the juvenile court erred in determining that ODHS proved by clear and convincing evidence that her custody of W was likely to result in serious emotional or physical damage to W. For the reasons explained below, we affirm.[3]

We have discretion to review dependency proceedings *de novo* in exceptional cases, but mother does not request *de novo* review, nor is it warranted. ORS 19.415(3)(b); ORAP 5.40(8)(c). As such, we review a juvenile court's order placing an Indian child in substitute care "for legal error, viewing the evidence in the light most favorable to the juvenile court's determinations and assuming the correctness of that court's explicit factual findings if any evidence in the record supports them." *Dept. of Human Services v. T. J.*, 302 Or App 531, 533, 462 P3d 315 (2020). We do not "substitute [our own] assessment of the persuasiveness of the evidence" nor "revisit the juvenile court's resolution of factual disputes or its choice among reasonable inferences." *Dept. of Human Services v. N. P.*, 257 Or App 633, 640, 307

---

[1] Mother did not challenge the juvenile court's dependency jurisdiction below and does not advance any arguments regarding jurisdiction on appeal.

[2] The Oregon Indian Child Welfare Act (ORICWA) also applies to this dependency case but does not provide any provision applicable to the placement argument raised in the hearing below and on appeal. Oregon Indian Child Welfare Act, Or Laws 2020, ch 14, §§ 1 - 66 (Spec Sess 1) (codifying new provisions at ORS chapter 419B.600 to 419B.665 and amending portions of ORS chapters 350, 418, 419A, and 419B).

[3] Since mother's appeal has been pending, the juvenile court entered a permanency judgment for Tribal Customary Adoption in September 2025 and entered a judgment for Tribal Customary Adoption in December 2025. Because mother has appealed those judgments, the case before us is not moot. *See Dept. of Human Services v. P. D.*, 368 Or 627, 631, 496 P3d 1029 (2021) ("As a general proposition, when it becomes clear that resolving the merits of a claim will have no practical effect on the rights of the parties, an appellate court may dismiss an appeal as moot.").

P3d 444 (2013). Our review is limited to whether the evidence in the record was sufficient to permit the challenged determination. *Id.*

25 USC section 1912(e), a provision within ICWA, governs the removal of Indian children from their homes. It requires proof, "by clear and convincing evidence, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child." 25 USC § 1912(e); *see Riley Hill General Contractor Inc. v. Tandy Corp.*, 303 Or 390, 401, 737 P2d 595 (1987) (holding that to satisfy the clear and convincing standard, the "evidence must establish that the truth of the facts asserted is 'highly probable'"); *see also Dept. of Human Services v. A. R. E.*, 340 Or App 73, 75-76, 571 P3d 211 (2025) (explaining that we review clear and convincing evidentiary standard matters to determine whether there is "sufficient evidence in the record for a rational factfinder to find that it is highly likely that the fact in question exists"). ICWA's removal standard exceeds what the law requires in cases that do not involve Indian children. *See Dept. of Human Services v. A. L.*, 268 Or App 391, 397-98, 342 P3d 174 (2015) (explaining that ORS 419B.100(1)(c) provides for juvenile court jurisdiction and removal of the child when the court determines, by a preponderance of the evidence, that the child's condition and circumstances expose the child to a current threat of serious loss or injury that will likely be realized).

The Bureau of Indian Affairs interpretive guidelines, though not binding, provide instructive guidance on ICWA's requirements. *Quinn v. Walters*, 320 Or 233, 260, 881 P2d 795 (1994). They emphasize that the likelihood of serious emotional or physical damage to the child cannot be presumed; rather, a nexus between custody by the parent and the likelihood of serious damage must be proved by clear and convincing evidence. *See* 25 CFR 23.121(c) ("For a foster-care placement or termination of parental rights, the evidence must show a causal relationship between the particular conditions in the home and the likelihood that continued custody of the child will result in serious emotional or physical damage to the particular child * * *."). In particular, 25 CFR

23.121(d) provides that without a causal relationship, "evidence that shows only the existence of community or family poverty, isolation, single parenthood, custodian age, crowded or inadequate housing, substance abuse, or nonconforming social behavior does not by itself constitute clear and convincing evidence." The guidelines explain that ICWA's rules

> "recognize that children can thrive when they are kept with their parents, even in homes that may not be ideal in terms of cleanliness, access to nutritious food, or personal space, or when a parent is single, impoverished, or a substance abuser. Rather, *there must be a demonstrated correlation between the conditions of the home and a threat to the specific child's emotional or physical well-being.*"

2016 BIA Guidelines § G.1 at 53 (emphasis added).[4]

Keeping in mind the clear and convincing evidence standard and viewing the facts in the light most favorable to the juvenile court's findings, our task is to determine whether any rational trier of fact, accepting reasonable inferences and credibility choices, could have reached the juvenile court's disposition. *State v. J. D. S.*, 242 Or App 445, 448, 263 P3d 1017 (2011) (so reviewing clear and convincing evidence in the context of civil commitment).

In this case, we consider the particular conditions in the home and the likelihood that the continued custody of W will result in "serious emotional or physical damage." 25 USC § 1912(e); *see T. J.*, 302 Or App at 539-42 (explaining that, even when jurisdiction exists, ICWA prohibits removal absent clear and convincing evidence that returning a child to the parent is likely to cause serious emotional or physical harm). Mother argues that the court erred in ordering the out-of-home placement because ODHS failed to prove by clear and convincing evidence that the conditions in the home created a likelihood of serious physical or emotional damage to W at the time of the placement hearing.

Having reviewed the evidentiary record, we conclude that the evidence was sufficient to support the out-of-home

---

[4] The current version of the guidelines issued in 2016. U. S. Dept. of the Interior, Bureau of Indian Affairs, *Guidelines for Implementing the Indian Child Welfare Act* (Dec 2016), https://www.bia.gov/sites/bia.gov/files/assets/bia/ois/pdf/idc2-056831.pdf (accessed Mar 23, 2026) (2016 BIA Guidelines).

placement of W. The juvenile court determined that W faced a likelihood of harm due to mother's inability to independently and consistently safely parent W. The evidence allowed a determination that, in a structured and supported living environment, mother was unable to consistently keep W safe. In particular, even with help, mother was unable to consistently address W's elopements, deal safely with his violent behavior, or address his toileting issues. Given that, the court could determine that, in light of mother's proposed living environment, which was more independent than the structured and supported environment that she had been in before, W would face a likelihood of serious emotional or physical damage.[5] We therefore affirm.

Affirmed.

---

[5] We note that the court's comments about the fact that other people would be living in and coming and going from mother's proposed living environment could be understood to suggest that the court improperly considered "crowded or inadequate housing" without any articulation of a causal connection with danger to W. 25 CFR 23.121(d). However, in this case, we do not understand those comments to have affected the court's analysis, which was that, even with some support, mother could not consistently keep W safe.