Submitted January 8, 2018, affirmed October 30, 2019

In the Matter of C. K.,
a Person Alleged to have Mental Illness.
STATE OF OREGON,
*Respondent,*

*v.*

C. K.,
*Appellant.*

Multnomah County Circuit Court
17CC03139; A165287

451 P3d 243

Appellant seeks reversal of an order committing her to the Oregon Health Authority for a period not to exceed 180 days on the grounds that her mental disorder makes her unable to provide for her basic needs, ORS 426.005(1)(f)(B). She contends, and the state concedes, that the evidence is insufficient to support her commitment. *Held*: In light of *State v. M. A. E.*, 299 Or App 231, 448 P3d 656 (2019), the evidence presented at appellant's civil commitment hearing was sufficient to support her basic-needs commitment under the amended version of ORS 426.005(1)(f)(B), because appellant's mental disorder made her unable to properly care for her ostomy area, which presented a nonspeculative risk of serious physical harm in the near future.

Affirmed.

Monica M. Smith-Herranz, Judge pro tempore.

Alexander C. Cambier and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Inge D. Wells, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, and DeVore, Judge, and James, Judge.

LAGESEN, P. J.

Affirmed.

**LAGESEN, P. J.**

Appellant seeks reversal of an order committing her to the Oregon Health Authority for a period not to exceed 180 days on multiple grounds, including that she suffers from a mental disorder that makes her unable to provide for her basic needs, ORS 426.005(1)(f)(B). She contends that the evidence is insufficient to support her commitment. Although the state concedes that the evidence is insufficient to support the commitment, we reject that concession insofar as it addresses the basic-needs basis for appellant's commitment. *See Cervantes v. Dept. of Human Services*, 295 Or App 691, 693, 435 P3d 831 (2019) ("We are not bound to accept [a] concession and must decide whether to accept it."). We do so in this case because the trial court committed appellant under the amended version of ORS 426.005(1)(f)(B), and, under our recent decision in *State v. M. A. E.*, 299 Or App 231, 448 P3d 656 (2019), the evidence presented in this case is sufficient to support appellant's basic-needs commitment under the amended version of the statute.

We review for legal error the trial court's determination that the evidence is legally sufficient to support appellant's civil commitment, viewing the evidence in the light most favorable to the trial court's decision. *State v. S. R.*, 267 Or App 618, 619, 341 P3d 160 (2014).

At issue is whether the evidence is legally sufficient to support the trial court's determination that appellant's mental disorder (it is undisputed that she has one) makes her unable to provide for her basic needs within the meaning of ORS 426.005(1)(f)(B), which provides:

"(f)  'Person with mental illness' means a person who, because of a mental disorder, is one or more of the following:

"* * * * *

"(B)   Unable to provide for basic personal needs that are necessary to avoid serious physical harm in the near future, and is not receiving such care as is necessary to avoid such harm."

As we recently explained in *M. A. E.*, the current version of ORS 426.005(1)(f)(B)—which took effect on January 1,

2016—altered the legal standard for a basic-needs commitment. 299 Or App at 236-37. Under the previous version of the statute, as we had construed it, a basic-needs commitment was authorized only when, absent commitment, the person faced "an imminent threat to safe survival" because of an inability to attend to the person's own basic needs. *Id*. at 237. We concluded that the amendments changed the basic-needs standard in two ways: "one that relates to the type of risk the allegedly mentally ill person must face if not involuntarily committed ('serious physical harm') and one that relates to the time-frame in which that risk must exist ('in the near future')." *Id*. (quoting ORS 426.005(1)(f)(B)). We explained that, as a result of the amendments, the standard for a basic-needs commitment is now as follows:

> "[A] person meets the 'basic needs' definition of a '[p]erson with mental illness' under ORS 426.005(1)(f)(B) if the person is unable to provide for his or her basic personal needs in a way that leaves the person at nonspeculative risk of 'serious physical harm'—meaning that the person's safe survival will be compromised—in the near future, even though that risk is not imminent."

*Id*. at 240. Applying the standard to the evidence in that case, we concluded that, although it was a close call, the record supported the inference that, if released, the appellant would stop taking her medication, decompensate, and have great difficulty making her own arrangements for food. *Id*. at 241-42. Specifically, we concluded that, "[v]iewed as a whole, the record thus supports a determination that, if appellant were released from the hospital, she would stop taking medication and, in no more than a week, become unable to obtain food, even if she might wish to eat." *Id*. That, we concluded, was sufficient to support the trial court's "basic needs" determination under the amended version of ORS 426.005(1)(f)(B). *Id*. at 242.

We reach a similar conclusion in this case. Although this case likewise is a close case, the evidence presented below ultimately allows for the inference that, absent hospitalization, due to her mental disorder and her complicated medical condition, appellant faces a nonspeculative risk of suffering from a serious, life-threatening infection in the near future.

        Specifically, at the time of the hearing, appellant
was 61 years old and being cared for by a medical team at
the Unity Center for Behavioral Health. Before being taken
to Unity, appellant had briefly been detained in jail and,
before that, been in a nursing facility. However, at the time
of the hearing, she did not have a residence and would need
to stay in a motel if released.

        Appellant suffers from depressive disorder. She also
has "memory issues and declining executive functioning,"
indicating a "major neurocognitive disorder." Appellant also
suffers from a number of serious physical ailments, includ-
ing "marked[]" hypertension, untreated hepatitis C, chronic
kidney disease, chronic pain from a hip injury, and, due to
cancer that had required surgical removal of part of her
bowel eight years earlier, an ostomy site, which is an open-
ing in the skin that allows feces to be collected in a colos-
tomy bag outside of the body.

        A few days before the commitment hearing, while
appellant was hospitalized, a CT scan indicated that the
ostomy site had become infected or inflamed, although it had
improved by the time of the hearing. Dr. Njoroge, a member
of appellant's treatment team, observed that the ostomy site
needed to be better taken care of. Regarding proper care of
the site, he explained that it is "an extremely tough situation
to deal with, having an ostomy"; the area "needs to be kept
very, very clean," and "[i]t needs to be changed often." He
explained that there are risks of infection and obstruction,
and that "[i]t needs frequent follow-up *** with a consistent
medical provider."

        Njoroge testified that it does not appear that appel-
lant is able to care for the area by herself.

    "She, off and on, is not able to *** keep the area sanitary,
    using gloves. She is not able to keep it from being inflamed,
    by not poking at it and—and using abrasive things on it.
    And she often can't remember her medications and when
    it's time to take care of—of the ostomy."

Njoroge stated that there had been "multiple reports from
nurses" that appellant had "been trying to poke foreign
objects into her stoma."

In Njoroge's opinion, appellant's "ability to care for herself is *** lesser than the degree of—of care which her medical issues require." He also opined that there was a close relationship between her medical conditions and her mental state. He noted that "what we think is [a] depressed mood can certainly affect one—one's motivation, concentration, and therefore affect [one's] ability to care for such an intricate medical procedure." In addition, there was evidence that appellant's neurocognitive disorder affected her memory and executive functioning. Her memory issues had been observed to interfere with her ability to keep track of her medications and the care of her ostomy site. Njoroge explained that an issue "that keeps coming up is the administration of medications. An RN will give her medications, and a few minutes later she won't remember that she got it, and then that becomes a point of contention, and she becomes agitated."

Njoroge opined that, if appellant were to be released on the day of the hearing, it was "likely" that she would drink alcohol. In his opinion, the effect of alcohol on her conditions would be to "make her more depressed" and "would obviously make her less able to care for her complicated medical issues." Njoroge further opined that appellant's inability to correctly care for her medical conditions could have serious health consequences. He primarily focused on her ability to care for the ostomy site. "The most salient thing I can think of is infection of the area would—is close to a lot of vital organs and would be very, very serious."

"Q. Can you provide an estimate—or a medical opinion as to how that infection would play—would play out within like the next week if she were not—if she would be released, not care for herself? What would that week be like with the infection?

"A. She would likely not be able to tolerate food by mouth. She might get obstructed, and not be able to have output come out of the ostomy bag, which is dangerous, because that will also keep her from taking in food by mouth. She would become febrile and bacteria would probably enter her bloodstream, at which point she would become septic and go into organ failure."

Although this case, like *M. A. E.*, can be character-ized as a close case, all in all, this evidence supports a deter-mination that, if appellant were released from the hospital, she would lack the capacity to care for her ostomy site due to her mental disorder and memory lapses. This, in turn, would place her at nonspeculative risk of a serious life-threatening infection—one that could lead to organ failure—in the near future. Therefore, the trial court permissibly found that the state had met its burden of proving by clear and convincing evidence that appellant was unable to provide for her basic personal needs that are necessary to avoid serious physical harm in the near future.

Affirmed.