Submitted September 22, 2020, reversed March 3, 2021

In the Matter of R. L. M.,
a Person Alleged to have Mental Illness.

STATE OF OREGON,
*Respondent,*

*v.*

R. L. M.,
*Appellant.*

Lane County Circuit Court
19CC06255; A173009

482 P3d 201

Appellant appeals a judgment committing him to the custody of the Oregon Health Authority, for a period not to exceed 180 days, under ORS 426.005(1)(f)(B). The trial court determined that, due to a mental disorder, appellant was unable to provide for his basic personal needs. Specifically, the trial court determined that, due to his schizoaffective disorder, appellant was unable to manage his heart condition, atrial fibrillation, in that he was not taking the medication prescribed for that condition. In challenging that determination, appellant does not contest that he has a mental disorder, but he argues that the evidence was legally insufficient to meet the standard for a basic-needs commitment. *Held*: The trial court erred in civilly committing appellant. To support a basic-needs commitment, the state had to prove that, due to a mental disorder, appellant was unable to provide for basic personal needs that were necessary to avoid serious physical harm in the near future and that he was not receiving such care as was necessary to avoid such harm. Viewed in the light most favorable to the state, the minimal evidence in the record regarding the risk to appellant from not taking his atrial-fibrillation medication was legally insufficient to meet the basic-needs standard.

Reversed.

Karrie K. McIntyre, Judge.

Alexander C. Cambier and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Jordan R. Silk, Assistant Attorney General, filed the brief for respondent.

Before Armstrong, Presiding Judge, and Tookey, Judge, and Aoyagi, Judge.

AOYAGI, J.

Reversed.

## AOYAGI, J.

Appellant appeals a judgment committing him to the custody of the Oregon Health Authority on the basis that he is unable to provide for his basic needs due to a mental disorder. Appellant does not contest that he has a mental disorder, but he argues that the evidence was legally insufficient to establish that he is unable to provide for his basic needs within the meaning of ORS 426.005(1)(f)(B). The trial court's basic-needs determination pertains to appellant's heart condition—atrial fibrillation or "Afib"—and his failure, due to his mental disorder, to take his prescribed medication to manage it. We agree with appellant that the evidence was legally insufficient and, accordingly, reverse.

### FACTS

We state the facts in the light most favorable to the trial court's disposition. *See State v. L. R.*, 283 Or App 618, 619, 391 P3d 880 (2017) (standard for non-*de novo* review). Our task is to determine whether the record, so viewed, is sufficient to meet the legal standard for involuntary civil commitment. *Id*.

Appellant is a 66-year-old man with schizoaffective disorder. Appellant also has heart problems, including Afib, congestive heart failure, and chronic systolic heart failure, for which he has received treatment in the past and has been prescribed medication. In November 2019, appellant reported to a hospital emergency department with gastrointestinal bleeding and underwent emergency surgery. Appellant was later put on a physician's hold for mental illness. The record is unclear as to the details of appellant's hospitalization, which involved two or three hospitals, but, at some point, appellant was hospitalized at Riverbend for some period of time.

Appellant's civil commitment hearing was held on November 25. The state's only witness was Dr. Cruz, a doctor who treated appellant at Riverbend. Cruz testified that appellant has poor insight into both his medical condition and his psychiatric condition. While hospitalized at Riverbend, appellant consistently refused both his psychiatric medication, which he said causes brain damage, and his Afib medication,

which he said that he did not need.[1] When asked if not taking his Afib medication put appellant at risk of imminent serious injury or death, Cruz answered that it put appellant "at risk of death" but that "we cannot tell if it's imminent because it's so unpredictable." Cruz continued, "You know, he can be okay right now and then there could be a tweaker and that can exacerbate his Afib and that can cause his death." That was the entirety of the evidence as to the risk associated with appellant not taking his Afib medication.

After hearing the evidence, the trial court determined that appellant has a mental disorder (schizoaffective disorder) and that, as a result of his mental disorder, he is unable to provide for his basic needs and would not receive necessary care without state intervention. The court pointed to appellant's failure to manage his "continuing and ongoing medical issues," which, in context, the parties agree refers to appellant's failure to take his prescribed Afib medication. The court committed appellant to the Oregon Health Authority for a period not to exceed 180 days.

Appellant appeals the resulting judgment of commitment. In a single assignment of error, he challenges the trial court's determination that he has mental illness within the meaning of ORS 426.005(1)(f)(B). Appellant does not contest that he has a mental disorder, but he argues that the evidence was insufficient to meet the legal standard for a basic-needs commitment.

## ANALYSIS

ORS 426.130 provides for civil commitment of a "person with mental illness." As relevant here, a "person with mental illness" includes a person who, because of a mental disorder, is "unable to provide for basic personal needs that are necessary to avoid serious physical harm in the near future, and is not receiving such care as is necessary to avoid such harm." ORS 426.005(1)(f)(B).

To meet that standard, the state must prove that the person "is unable to provide for his or her basic personal

---

[1] There was very little evidence about appellant's Afib medication compliance *before* his hospitalization. The most favorable evidence to the state was appellant's own testimony, which, if credited, would allow a finding that appellant cycles on and off his Afib medication for perceived medical reasons.

needs in a way that leaves the person at nonspeculative risk of serious physical harm—meaning that the person's safe survival will be compromised—in the near future." *State v. M. A. E.*, 299 Or App 231, 240, 448 P3d 656 (2019) (internal quotation marks omitted). Civil commitment seriously impinges on a person's liberty, and merely having a mental disorder is not a basis for civil commitment. *State v. D. R.*, 239 Or App 576, 582, 244 P3d 916 (2010); *State v. Miller*, 198 Or App 153, 161, 107 P3d 683 (2005). Nor is civil commitment to be used as "a paternalistic vehicle for 'saving people from themselves.'" *State v. White*, 155 Or App 288, 294, 963 P2d 107 (1998) (quoting *State v. Gjerde*, 147 Or App 187, 196, 935 P2d 1224 (1997)).

Appellant contends that, because Cruz was unable to quantify appellant's near-term risk of death from unmanaged Afib in any way, the state failed to prove that the legal standard for a basic-needs commitment was met. In response, the state argues that there was sufficient evidence for a basic-needs commitment, because appellant's mental disorder interferes with his ability to manage a serious health condition that poses a risk of life-threatening consequences. On this record, we agree with appellant that the evidence was legally insufficient to permit involuntary commitment.

In *State v. C. M. C.*, 301 Or App 206, 212-13, 454 P3d 30 (2019), we reversed a basic-needs commitment where, among other things, the appellant's mental disorder interfered with his ability to treat his Hepatitis C and other medical problems. A psychiatric mental health nurse practitioner testified that the appellant's medical problems "could become life-threatening if not treated." *Id.* at 213. We concluded that, "from that testimony alone, the trial court could not determine whether the risk will transpire 'in the near future.'" *Id*. We contrasted *M. A. E.*, in which there was evidence that the appellant "'would decompensate within a matter of days to a week'" without state intervention. *Id*. (quoting *M. A. E.*, 299 Or App at 241). Because the record in *C. M. C.* lacked a "nonvague estimation of appellant's expected rate of decline or decompensation," the evidence was insufficient to meet the basic-needs standard. *Id*. at 212-13.

By contrast, in *State v. C. K.*, 300 Or App 313, 316-18, 451 P3d 243 (2019), we affirmed a basic-needs commitment where, due to a mental disorder, the appellant was unable to manage her ostomy site (an opening in the skin that allows feces to be collected in a colostomy bag after bowel removal). The appellant was unable to keep the site clean, unable to stop poking at it and using abrasive things on it, and often could not remember her medications or that it was time to take care of the site. *Id.* at 316. Because the ostomy site was located near numerous vital organs, it "would be very, very serious" if it became infected. *Id.* at 317. The appellant's doctor was asked what would happen medically over "the next week" if the appellant was released from the hospital and was unable to care for her ostomy site, such that it became infected. The doctor testified that, in his medical opinion, the appellant would likely not be able to tolerate food by mouth, which could lead to a dangerous obstruction, at which point she would get a fever, bacteria would likely enter her bloodstream, and then she would become septic and go into organ failure. *Id.* Describing it as a "close case," we held that the evidence was sufficient to establish that, "absent hospitalization, due to her mental disorder and her complicated medical condition, appellant faces a nonspeculative risk of suffering from a serious life-threatening infection in the near future." *Id.* at 315.[2]

*C. M. C.* and *C. K.* are part of a long line of cases recognizing that, for purposes of a basic-needs civil commitment, the evidence must establish not only that a person's inability to attend to a basic need risks the person suffering an adverse medical consequence, but also *how soon* that adverse consequence is likely to occur. The current version of ORS 426.005(1)(f)(B), which took effect in 2016, requires a somewhat less immediate risk than the prior version. Now, the anticipated harm must be one that will occur "in the near future," whereas, previously, it had to be "imminent."

_____

[2] Because of the highly fact- and context-specific nature of civil commitment cases, fact-matching is of limited utility. *State v. C. A. J.*, 230 Or App 224, 232, 213 P3d 1279, *rev den*, 347 Or 446 (2009). Also, older decisions must be approached with caution, because of the 2016 amendments to ORS 426.005 (1)(f)(B) and the 2009 statutory change to the *de novo* standard of review. *See M. A. E.*, 299 Or App at 232; *D. R.*, 239 Or App at 578 & n 3. Nonetheless, past decisions can illustrate underlying principles.

*M. A. E.*, 299 Or App at 240. But the basic principle remains the same: The evidence must establish *how soon* the anticipated harm will likely occur if the appellant is released and is unable to provide for his or her basic needs. *See, e.g.*, *State v. S. P.*, 282 Or App 177, 181, 186-87, 387 P3d 443 (2016) (reversing commitment, where the appellant not taking his medication for severe hypertension would be "very hard on his arteries and his brain," but there was no evidence that it jeopardized his near-term survival); *State v. M. L. F.*, 220 Or App 629, 634-36, 188 P3d 368 (2008) (reversing commitment, where the testifying doctor was unsure of the level of risk attendant to the appellant not taking her anticoagulant medication; also stating, as relevant to both the danger-to-self and basic-needs standards, that "reasoned determination" of the risk associated with discontinuing the medication "required expert medical testimony assessing the nature, severity, proximity, and likelihood of adverse physical consequences based on appellant's medical history and current condition"); *State v. M. A. B.*, 212 Or App 400, 403, 405-06, 157 P3d 1256 (2007) (reversing commitment, where the appellant's failure to take his blood pressure medication put him at increased risk of heart disease and stroke, but it was "'not a near future thing' necessarily resulting in harm in the next weeks or even months").

In this case, to affirm the trial court's ruling, there had to be evidence that appellant taking his Afib medication was "necessary to avoid serious physical harm *in the near future*." ORS 426.005(1)(f)(B) (emphasis added). That is, to support a basic-needs commitment, appellant's failure to take his Afib medication had to subject him to a "nonspeculative risk of serious physical harm—meaning that [appellant's] safe survival will be compromised—in the near future." *M. A. E.*, 299 Or App at 240 (internal quotation marks omitted).

The evidence in this record is certainly sufficient to establish that appellant not taking his Afib medication exposes him to a nonspeculative risk of serious physical harm, specifically death, *at some point*. The question is whether it is sufficient to establish a nonspeculative risk of death "in the near future."

We conclude that it is not. The only evidence as to the timing of the risk to appellant from not taking his Afib medication is Cruz's testimony that, although not taking the medication created a risk of death, "we cannot tell if it's imminent because it's so unpredictable," and that appellant "can be okay right now and then there could be a tweaker and that can exacerbate his Afib and that can cause his death." That testimony does not quantify the *near-term* risk to appellant in any way and, thus, does not satisfy the legal standard for a basic-needs commitment. To illustrate, if appellant's failure to take his Afib medication creates a significant risk that he will die from an atrial fibrillation event at some point during the next 20 years—but creates only a tiny risk that he will die from an atrial fibrillation event in the near future (whether that be defined in days or weeks)—we would not be able to say that appellant taking his Afib medication is "necessary to avoid serious physical harm in the near future." ORS 426.005(1)(f)(B).

Akin to what we said in *M. L. F.*, a "reasoned determination" of appellant's near-term risk if he does not take his Afib medication "required expert medical testimony assessing the nature, severity, proximity, and likelihood of adverse physical consequences based on appellant's medical history and current condition." 220 Or App at 634. Here, Cruz identified a specific adverse consequence that could occur—death—but provided no information about its likelihood in the near future. Nor did Cruz address the severity of appellant's Afib, to the extent that that was relevant to appellant's degree of risk. *See State v. Hayes*, 202 Or App 63, 67, 121 P3d 17 (2005) (noting lack of evidence about "the nature or severity of appellant's diabetes").

Of course, we are not suggesting that a medical professional had to quantify appellant's near-term risk of death with pinpoint precision. Rather, consistent with precedent, what was required was evidence that appellant's failure to take his Afib medication was likely to result in his death (or other serious physical harm) in the near future. *See C. K.*, 300 Or App at 317 (affirming commitment, where doctor testified as to what would "likely" occur "in the next week" if the appellant was released and could not care for her ostomy site); *State v. L. M.*, 299 Or App 710, 715-16, 450

P3d 548 (2019) (reversing commitment, where the evidence was sufficient to prove that the appellant was "likely to resist medical treatment" for future injuries, but was insufficient to prove that he was "likely to sustain an injury in the near future that, if untreated, will lead to serious physical harm"); *State v. S. R.*, 267 Or App 618, 619, 341 P3d 160 (2014) (requiring evidence that a person's inability to meet basic needs "makes it likely that the person will not survive in the near term"); *State v. C. A. J.*, 230 Or App 224, 232, 213 P3d 1279, *rev den*, 347 Or 446 (2009) (affirming commitment, based on evidence that, if released, the appellant "likely" would not administer her diabetes medication properly and "likely will become more confused and place herself in a life threatening condition within a matter of days"); *Hayes*, 202 Or App at 67 (requiring evidence of "the consequences that [the appellant] would likely suffer in the near future" if she failed to take her medication); *State v. Bunting*, 112 Or App 143, 146, 826 P2d 1060 (1992) (requiring the state to demonstrate "a likelihood that the person probably would not survive in the near future").[3]

That evidence is absent in this case. There is no evidence that appellant is likely to die (or suffer other serious physical harm) in the near future if he does not take his Afib medication. Cruz was asked a single question on this issue—whether appellant not taking his Afib medication put him "at risk of imminent serious injury or death"—and he answered that it put appellant at risk of death but that it was too "unpredictable" to say if it was imminent. Such equivocal testimony about appellant's risk of death in the near future—or over any period of time for that matter— was legally insufficient to support a basic-needs commitment. We therefore agree with appellant that the trial court erred in committing him on the basis that it did.

Reversed.

---

[3] Again, our case law applying the pre-2016 version of ORS 426.005(1)(f)(B) remains relevant to aspects of the statute that have not changed. Whether the relevant timeframe is the near future (as it is now) or the imminent future (as it used to be), the state has always had to prove that the anticipated harm is likely to occur within the relevant timeframe. *See* 309 Or App at 550-51.