Submitted September 1, 2020, reversed July 28, 2021

In the Matter of J. D. J.,
a Person Alleged to have Mental Illness.
STATE OF OREGON,
*Respondent,*

*v.*

J. D. J.,
*Appellant.*

Clackamas County Circuit Court
19CC02621; A171312

496 P3d 1095

Appellant was committed to the custody of the Mental Health Division for a period not to exceed 180 days based upon the trial court's finding that she was unable to provide for the basic personal needs necessary to avoid serious physical harm in the near future and was not receiving the care necessary to avoid such harm. On appeal, she argues that (1) she is entitled to reversal because the proceedings below were not recorded; and (2) assuming that the parties' agreed narrative statement about what transpired below is sufficient for appellate review, the state failed to present legally sufficient evidence to support the commitment. *Held*: In light of the state's burden to prove the basis for commitment and the particular arguments that were presented in the case, the agreed narrative statement allowed the Court of Appeals to conduct meaningful review, and the court limited its consideration to those parts of the narrative statement on which the parties actually agreed. As for the merits of the commitment order, the record before the court was not sufficient to prove that appellant's inability to appreciate and take care of her medical needs was likely to result in serious physical harm in the near future.

Reversed.

Colleen F. Gilmartin, Judge pro tempore.

Joseph R. DeBin and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and E. Nani Apo, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, and James, Judge, and Kamins, Judge.

LAGESEN, P. J.

Reversed.

## LAGESEN, P. J.

Appellant was committed to the custody of the Mental Health Division for a period not to exceed 180 days based upon the trial court's finding that she was unable to provide for the basic personal needs necessary to avoid serious physical harm in the near future and was not receiving the care necessary to avoid such harm. *See* ORS 426.005 (1)(f)(B). On appeal, she argues that (1) she is entitled to reversal because the proceedings below were not recorded; and (2) assuming that the parties' agreed narrative statement about what transpired below is sufficient for this court's review, the state failed to present legally sufficient evidence to support the commitment. We reject appellant's argument that the lack of a recording itself entitles her to reversal in this case, but we agree that the record before us does not support the commitment order. Accordingly, we reverse.

*Record on appeal*. The record we have is by and large the product of "technical difficulties with the recording equipment" in the trial court. Because of those "technical difficulties," the parties filed an agreed narrative statement in lieu of a transcript of the proceedings below. *See* ORS 19.380 ("In lieu of or in addition to a transcript, the parties may prepare an agreed narrative statement of the proceedings below or parts thereof."); ORAP 3.45 ("If the parties agree to a narrative statement in lieu of or in addition to a transcript and the parties are able to reconstruct the statements and testimony of the judge, parties, counsel, witnesses, and others present at the proceeding, the narrative statement shall follow as nearly as practicable the form prescribed for transcripts in ORAP 3.35; otherwise, the statement may be in narrative form.").

The agreed narrative statement begins by identifying "Exhibit 1" as having been admitted at the commitment hearing. Exhibit 1 is a two-page excerpt from a precommitment investigator's report. The first page describes the "mental status" examination of appellant, including that appellant's thoughts were "tangential and demonstrated limited insight into need for on-going care"; it states that "[i]nitial diagnostic impression is Bipolar 1 Disorder based

on records review and presentation. [Appellant] exhibits sleep disruption, irritability, labile mood, pressured speech, disorganization of thought, hyper-religiousness, hyper sexuality, and persecutory paranoia involving her ex-husband and thoughts of his desire to kill her." The second page recites the investigator's recommendation—essentially, that appellant was unable to provide for her basic needs and should be committed because she "is experiencing sleep disruption, irritability, labile mood, pressured speech, disorganization of thought, hyper-religiousness, hyper sexuality, persecutory paranoia *that leave her unable to safely navigate her multiple healthcare needs*." (Emphasis added.)

After referring to Exhibit 1, the agreed narrative statement provides the following review of the evidence and of appellant's closing argument:

"The treating psychiatrist diagnosed her as of May 13, 2019, with Bipolar Type I, manic. Appellant had decreased need for sleep, pressured speech, flight of ideas, hypersexual, religious ideas, delusional thoughts about her ex-husband, conspiracies, labile mood, screaming and yelling at night and impulsive behavior. She was not violent and had no self harm behavior. Appellant denied that she has a mental health disorder. She had initially refused olanzapine, but did take it the night before the hearing. She had been taking Depakote since 5/11. Appellant said that she would take her medications until she felt rested and then would stop taking them. She had taken multiple medications today for her physical ailments. At this time she still has significant symptoms of mania and it could take at least 2 weeks to stabilize to move to a less restrictive setting. Appellant had a number of medical issues including congestive heart failure, breast cancer, hypothyroidism, hypertension, and lupus. In January 2019, she was too weak to call 911, but was able to yell loud enough for a neighbor to hear her and call an ambulance. The ambulance took appellant to the hospital. She was in the intensive care unit. She was not attending appointments with her primary care physician. The psychiatrist was concerned for her fragile health and chronic pain secondary to lupus.

"Her outpatient therapist also testified he had known her for 2 years. She had a history of bipolar. She had made significant improvements with therapy. The therapist was not familiar with her living conditions until about 4-5

weeks ago. He checked on her at home on May 2 and her home 'was a disaster.' There were many tripping hazards throughout the home. She lives alone with a service dog. She relies upon neighbors to help but they were concerned about their ability to help. She was not attending appointments. She gets meals on wheels. She gets some help with food from neighbors. The psychiatrist was concerned about appellant missing medical and therapy appointments.

"The investigator testified that she would be able to return to her residence. Appellant gets SSD and alimony. Between May 9 and 14 she had some indication of paranoia, delusions and tangential thoughts. She was focused on her dog. Her mood was labile.

"In closing argument, defense counsel argued that the state failed to meet its burden of proof because she had sufficient income to pay her expenses, she had a place to live, she was taking her medication for her physical medical problems and she was willing to continue with outpatient treatment."

(Footnotes omitted.)

The "agreed" narrative statement also identifies two points on which the parties were unable to agree: (1) whether there was testimony as to appellant nearly dying from renal problems; and (2) whether her outpatient therapist testified that he did not see grandiosity, delusional behavior, or paranoia.

*Lack of audio record as grounds for automatic reversal.* In appellant's first assignment of error, she contends that, notwithstanding the agreed narrative statement, the trial court "violated appellant's right to due process by conducting a completely unrecorded civil commitment hearing, and also seeks reversal under ORS 19.420(3)," which provides for reversal "as justice may require" in the case of loss or destruction of audio records. Appellant argues that the agreed narrative statement is insufficient because it is "not reasonable to expect the parties to agree on who said what over the course of an entire hearing," as reflected by their inability to agree about certain testimony.

In response, the state asserts that the agreed narrative statement adequately protects appellant's rights to due process and meaningful appellate review; according to

the state, in view of its burden to prove the basis for commitment, the parties' inability to reach agreement on the testimony at issue would "only impact the state's ability to defend the commitment; it would not hinder appellant's ability to argue that the evidence was insufficient to support that commitment."

We agree with the state that, in light of its burden and the particular arguments that have been presented in this case, the agreed narrative statement allows us to conduct meaningful review. For purposes of review, we take into account only those parts of the narrative statement on which the parties actually agree—a fundamental aspect of an "*agreed* narrative statement" under ORS 19.380. (Emphasis added.) And, as our resolution of appellant's second assignment of error will demonstrate, our review of the sufficiency of the evidence based on the agreed narrative statement and referenced exhibit is adequate to protect appellant's rights.[1] We therefore reject appellant's first assignment of error and turn to the merits of the commitment order.[2]

*Evidentiary sufficiency.* In her second assignment of error, appellant argues that the state failed to present sufficient evidence to support the order of commitment. Specifically, she argues that the state failed to present evidence to support a finding that her condition at the time of the hearing was such that she was at risk of serious physical harm in the near future. "To meet that standard, the state must prove that the person 'is unable to provide for his or

---

[1] If the matters subject to disagreement were potentially dispositive in favor of *appellant*—for instance, the state's evidence would be legally sufficient but for the disputed testimony—our analysis of this assignment of error would be different. But, in this case, appellant is not disadvantaged by the inability of the parties to agree, considering that she is entitled to reversal based on the record that the state agrees is sufficient for our review.

[2] We appreciate how difficult it is to reconstruct the record of proceedings, especially when a considerable amount of time has passed between the hearing and the discovery that the recording has been lost. Although we ultimately conclude that the parties' narrative statement is sufficient for our review, we note that, when possible, a more detailed recitation of agreed-upon facts or, when facts are disputed, the opposing testimony, will generally facilitate our review function better than a more generalized summary, an observation that is consistent with ORAP 3.45's directive that narrative statements should resemble transcripts when possible. *See* ORAP 3.45 (providing that the "narrative statement shall follow as nearly as practicable the form prescribed for transcripts in ORAP 3.35; otherwise, the statement may be in narrative form").

her basic personal needs in a way that leaves the person at nonspeculative risk of serious physical harm—meaning that the person's safe survival will be compromised—in the near future.'" *State v. R. L. M.*, 309 Or App 545, 548-49, 482 P3d 201 (2021) (quoting *State v. M. A. E.*, 299 Or App 231, 240, 448 P3d 656 (2019)).

We agree with appellant that the record before us is not sufficient to satisfy that standard. Exhibit 1 and the agreed narrative statement list "a number of medical issues including congestive heart failure, breast cancer, hypothyroidism, hypertension, and lupus" that appellant "had," and there is evidence that she was taken to the intensive care unit in January 2019. However, the exhibit and narrative do not reflect which, if any, of those health conditions were the reason that she was hospitalized at that time, which was four months before the commitment proceedings, or the severity of those conditions at the time of the commitment proceedings.[3] And, although the record indicates that appellant was not going to medical appointments and failed to appreciate her health issues, there is no evidence in the record as to the stage of her medical conditions, the treatment she was receiving, or the risks from neglecting any treatment.[4]

For that reason, we conclude that the state failed to prove that appellant's inability to appreciate and take care of her medical needs was likely to result in serious physical harm in the near future. *See R. L. M.*, 309 Or App at 550 (describing "long line of cases recognizing that, for purposes of a basic-needs civil commitment, the evidence must establish not only that a person's inability to attend to a basic need risks the person suffering an adverse medical

---

[3] In fact, there is some indication in the trial court file (in the medical examiners' reports) that appellant had a *history* of breast cancer.

[4] In addition to Exhibit 1 and the agreed narrative, the state relies on facts drawn from the reports of the medical examiners that were filed under ORS 426.120. Assuming that the facts recited in those reports are properly before us in this procedural posture, the descriptions of appellant's medical conditions in those reports do not change our view that the state failed to present sufficient evidence of a risk to appellant's safe survival in the near future as a result of her mental disorder. One of the examiner's reports indicates that appellant "gave a history of nearly dying with renal problems earlier this year," but it does not otherwise discuss the cause of the renal failure or provide a nonspeculative basis for concluding that any of her conditions, left untreated, would result in renal failure or other serious health conditions in the near future.

consequence, but also how soon that adverse consequence is likely to occur" (emphasis omitted)); *id.* at 552 (reversing commitment order where state failed to show that appellant's "failure to take his Afib medication was likely to result in his death (or other serious physical harm) in the near future"). Simply put, maybe because of the lack of audio recording, maybe because of the lack of evidence, this record lacks sufficient detail about appellant's conditions and the risks that they posed to her at the time of the hearing to support a rational determination that appellant's mental disorder compromised her near-term safe survival at the time of the commitment hearing.

Reversed.