400 June 26, 2024 No. 425

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of C. W., preferred name R. P.,
a Person Alleged to Have Mental Illness.

STATE OF OREGON,
*Respondent,*

*v.*

C. W.,
preferred named R. P.,
*Appellant.*

Lane County Circuit Court
23CC01373; A180957

Charles M. Zennaché, Judge.

Argued and submitted March 20, 2024.

Christopher J. O'Connor argued the cause for appellant. Also on the brief was Multnomah Defenders, Inc.

Kate Morrow, Assistant Attorney General, argued the cause for appellant. On the brief were Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Philip Thoennes, Assistant Attorney General.

Before Aoyagi, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

JOYCE, J.

Affirmed.

**JOYCE, J.**

Appellant appeals from a judgment committing her to the custody of the Oregon Health Authority (OHA) for a period not to exceed 180 days. The trial court determined that appellant's mental disorder rendered her unable to provide for her basic personal needs within the meaning of ORS 426.005(1)(f)(B). That standard requires, among other things, a showing that the person's inability to provide for their basic needs places them at "nonspeculative risk of serious physical harm" in the "near future." *State v. M. A. E.*, 299 Or App 231, 240, 448 P3d 656 (2019) (internal quotation marks omitted). On appeal, appellant argues that the record is insufficient to support the trial court's basic-needs determination because the evidence is too vague to establish whether appellant risks serious physical harm in the "near future." In her second assignment of error, appellant contends that the trial court erred in "issuing a firearms prohibition because the court did not follow the statutory analysis laid out in ORS 426.130(1)(a)(D)." We conclude that the record supports the trial court's basic-needs determination and that the trial court did not err in providing appellant with the notification that is required under ORS 426.130(4). Thus, we affirm.

On appeal, we review whether the state presented sufficient evidence to support appellant's civil commitment for legal error, and we view the evidence in the light most favorable to the trial court's decision. *State v. C. M. C.*, 301 Or App 206, 207, 454 P3d 30 (2019). We state the facts consistently with that standard.

Appellant has schizophrenia—a mental disorder that causes her to have delusions and "auditory and visual hallucinations." In addition to her mental disorder, appellant also suffers from a number of physical ailments including chronic kidney disease, anemia, gastroesophageal reflux disease, and ulcerative colitis. Ulcerative colitis is a condition that causes inflammation and ulcers in the digestive tract. In appellant's case, she has an autoimmune form of ulcerative colitis that also causes her to have chronic gastrointestinal (GI) bleeding.

To manage her symptoms and to decrease the severity of that internal bleeding, appellant requires a variety of routine preventative care. More specifically, appellant needs medical infusions every three months "to decrease exacerbation of GI bleeds," daily medication "to manage the inflammation for her GI tract," and a specific diet containing "certain types of fiber" to help her "retain and absorb iron so that she doesn't become [severely] anemic." She also must be closely monitored via routine complete blood counts to ensure that she does not become severely anemic. On one occasion, when appellant's ulcerative colitis caused her to be severely anemic, she had to be hospitalized, and her condition required two blood transfusions; another time when appellant was hospitalized due to her ulcerative colitis, she had to receive iron transfusions. Although appellant has been hospitalized several times because of her many health concerns, appellant's last hospitalization due to complications stemming only from her ulcerative colitis occurred two years prior to the civil commitment hearing.

A week before the civil commitment hearing, appellant was admitted to the hospital after she was found outside in a delusional state. Hicks, a psychiatric mental health nurse practitioner, treated appellant each day that week leading up to the civil commitment hearing. Hicks explained that, since appellant's admission to the hospital, appellant had been refusing to take medications for her schizophrenia and ulcerative colitis. Hicks believed that appellant's mental health condition was impacting her ability to "maintain a proper diet and medication regimen" because her mental state left her "unable to [exercise] appropriate judgment" and prevented her from "recogniz[ing] that she needs help." Because appellant did not recognize that she has a mental illness, Hicks did not believe that appellant would voluntarily or willingly participate in her own treatment.

Kernan, a nurse practitioner who had been providing medical care to appellant on a weekly basis since 2021, also testified. She explained that appellant's various conditions could result in "serious bodily injury if not treated." In particular, Kernan stated that appellant's ulcerative colitis causes her to have inflammation in her GI tract, which, when exacerbated,

can cause her significant GI bleeding and severe anemia. Thus, Kernan testified that appellant's medications were necessary "to prevent increased exacerbation of the inflammation in her GI." Kernan further stated that if appellant's regular treatment was not maintained, she would expect appellant to "decompensate physically." When asked how quickly appellant may end up in a hospitalization situation if she did not take her daily medication, Kernan responded that her medical history indicated that "it can be like a month or so before she ends up in the ER with significant symptoms of bleeding." Kernan clarified that a month was her "best guess" because the doctors "don't get to see what the inflammation looks like on a daily basis. [Appellant's GI tract] can become inflamed suddenly and then it can be, you know, weeks without inflammation." Kernan also testified that "every time [appellant] mentioned her food intake it was pretty much consistent with convenience store foods" and that those types of foods were likely to inflame appellant's GI tract.

After hearing the evidence, the trial court determined that appellant has a mental disorder (schizophrenia) and that, as a result of her mental disorder, she is unable to provide for her basic needs that are necessary to avoid serious harm in the near future. In coming to that conclusion, the court found that appellant's schizophrenia interfered with her ability to consistently take her medication and maintain a diet designed to reduce the risks and harms associated with ulcerative colitis. The court concluded that appellant's inability to routinely take her medication and adhere to her medically recommended diet was likely to cause appellant to suffer "significant gastrointestinal bleeding" that would require hospitalization "within a month." The court committed appellant to the OHA for a period not to exceed 180 days.

We begin with appellant's first claim of error. On appeal, appellant does not dispute that she has a mental disorder; rather, she asserts only that the evidence is insufficient to support the trial court's determination that her mental disorder rendered her unable to provide for her basic needs.

In the context of this case, we must determine whether the evidence establishes two things: (1) that

appellant's refusal, due to her mental disorder, to take her ulcerative colitis medication put her at a nonspeculative risk of suffering "serious physical harm" and (2) that the "serious physical harm" was likely to occur "in the near future." ORS 426.130 (outlining the circumstances in which a court is permitted to order civil commitment of a "person with mental illness"); ORS 426.005(1)(f)(B) (defining a "person with mental illness" to include a person who, because of a mental disorder, is "unable to provide for basic personal needs that are necessary to avoid serious physical harm in the near future, and is not receiving such care as is necessary to avoid such harm"); *State v. R. L. M.*, 309 Or App 545, 550, 482 P3d 201 (2021) (explaining that for evidence to be legally sufficient to support a trial court's basic needs determination, the evidence "must establish not only that a person's inability to attend to a basic need risks the person suffering an adverse medical consequence, but also how soon that adverse consequence is likely to occur" (emphasis omitted)).

As to that first point, we conclude that the evidence in this record establishes that appellant's failure to take her ulcerative colitis medication exposed her to a nonspeculative risk of serious physical harm, specifically significant GI bleeding and severe anemia. Appellant's refusal to take her ulcerative colitis and schizophrenia medications, combined with appellant's inability to recognize that she has a mental illness or that she needs help, supports the inference that, if appellant were released from the hospital, she would continue to not take her medication. That conclusion, taken together with Kernan's testimony that appellant's daily medication was necessary "to manage the inflammation for [appellant's] GI tract," and that, without that medication, appellant was likely to end up needing hospitalization for significant GI bleeding and severe anemia, is collectively sufficient to establish that appellant's failure to take her medication put her at a nonspeculative risk of serious physical harm that would compromise appellant's "safe survival." *M. A. E.*, 299 Or App at 240.

We next turn to the issue of whether the evidence is sufficient to establish that appellant is likely to suffer that serious physical harm "in the near future." We conclude

that it is. Kernan testified that appellant's medical history indicated that appellant's failure to take her ulcerative colitis medication would likely result in appellant being hospitalized and that it could be "like a month or so before she ends up in the ER with significant symptoms of bleeding." "[T]he risk of serious physical harm need not be *immediate* to justify involuntary commitment, so long as the person's mental disorder, and resulting lack of ability to provide for basic needs, puts the person at risk of such harm in the near future." *M. A. E.*, 299 Or App at 240 (emphasis in original). Here, Kernan's testimony was sufficient to establish that appellant's refusal to take her ulcerative colitis medication put her at risk of serious bodily harm that was likely to occur in around a month. Thus, Kernan's testimony quantified the near-term risk to appellant in a way that is sufficient under ORS 426.005(1)(f)(B).

To the extent that appellant argues that Kernan's testimony—that appellant would likely suffer the harm in "a month *or so*"—was too vague to establish a near-term risk of serious physical harm to appellant, we disagree. As we have previously explained, ORS 426.005(1)(f)(B) does not require medical professionals to quantify an appellant's near-term risk of harm with "pinpoint precision." *R. L. M.*, 309 Or App at 552. Rather, in assessing whether evidence is sufficient to establish a near-term risk of harm for an appellant, our precedent establishes that the evidence must "establish *how soon* the anticipated harm will likely occur." *Id.* at 551 (emphasis is original); *see also C. M. C.*, 301 Or App at 213 (concluding that the record was too vague to establish whether there was a risk of near-term harm where the only evidence on the issue—testimony that the appellant's Hepatitis C "could become life-threatening if not treated"—failed to deduce a timeframe in which the harm would likely occur). Kernan's testimony established a timeframe within which she expected the harm to occur. More specifically, Kernan stated that appellant's failure to take her ulcerative colitis medication was likely to result in serious physical harm to appellant in about a month; that testimony was sufficient to establish that the anticipated harm was likely to occur within a "near future" timeframe. ORS

426.005(1)(f)(B); *see R. L. M.*, 309 Or App at 552 (suggesting that "near future" could be defined "in days or weeks").

In her second claim of error, appellant contends that the trial court erred when it notified appellant that she was prohibited from purchasing or possessing a firearm. The trial court notified appellant of that prohibition twice—first, during the civil commitment hearing and, second, by including a notice provision in the judgment of commitment. At the conclusion of the civil commitment hearing, the court provided notice of the prohibition when it explained to appellant that "as a result of this order, you are hereby notified that federal and state law will prohibit you from purchasing or possessing a firearm." Then, in the judgment of commitment, the notice provision stated, "YOU ARE HEREBY NOTIFIED pursuant to ORS 166.250(1)(c)(D) and 18 USC § 922 (g)(4) that you are prohibited from purchasing or possessing a firearm unless you obtain relief from the prohibition from the Psychiatric Security Board under ORS 166.273 or under federal law." In appellant's view, the trial court erred in "issuing a firearms prohibition because the court did not follow the statutory analysis laid out in ORS 426.130(1)(a)(D)."

We first describe the statutory framework in which appellant's argument arises before describing why it fails. ORS 426.130(1)(a)(D) states that a court, having found that a person has a mental illness, "[s]hall" order that that person be prohibited from possessing firearms if the court finds that "there is a reasonable likelihood the person would constitute a danger to self or others or to the community" as a result of their mental disorder, based on the person's "past behavior or participation in incidents involving unlawful violence or threats of unlawful violence, or by reason of a single incident of extreme, violent, unlawful conduct."

Regardless of whether a court orders a firearm prohibition under ORS 426.130(1)(a)(D), however, once a person has been committed under ORS 426.130(1)(a)(C), that person is prohibited from possessing a firearm. *See, e.g.*, ORS 166.250(1)(c)(D) (stating that a person "commits the crime of unlawful possession of a firearm if the person knowingly *** possesses a firearm and *** was committed *** under ORS 426.130"). Correspondingly, when a court commits a

person, ORS 426.130(4) requires the court to notify the person of that prohibition:

> "If the court finds that the person is a person with mental illness and \*\*\* orders commitment under subsection (1)(a)(B) or (C) of this section[,] \*\*\* the court shall notify the person that the person is prohibited from purchasing or possessing a firearm under state and federal law unless the person obtains relief from the prohibition from the Psychiatric Security Review Board under ORS 166.273 or under federal law."

We turn to appellant's claim on appeal. Appellant asserts that the court erred in prohibiting appellant from possessing firearms under ORS 426.130(1)(a)(D) because the court did not engage in analyzing whether there was a "reasonable likelihood" that appellant would be a danger to self or others based on prior violent behavior.

But the notifications that the trial court provided here were not based on an ORS 426.130(1)(a)(D) determination; rather, the court ordered commitment of appellant under ORS 426.130(1)(a)(C) and thus provided appellant with notice pursuant to ORS 426.130(4). As explained above, ORS 426.130(4) does *not* require the court to make findings about the reasonable likelihood of future dangerousness. Instead, it is enough that the court determined that appellant is "a person with mental illness" and had "order[ed] commitment" of appellant under ORS 426.130(1)(a)(C).

Appellant nevertheless suggested at oral argument that it was error to include the notice in the judgment of commitment because to do so amounts to an "advisory opinion" about the consequences of the commitment. That view is incompatible with the fact that the court is required by statute to notify the person of the prohibition. ORS 426.130(4) does not specify how a court must notify a person of the prohibition, only that it must do so. Absent any requirement that a court provide that notice in a particular way, and in the absence of any argument as to how the inclusion of the provision in the final judgment runs afoul of the statute's requirements, the trial court did not err by including the notice in the judgment of commitment.

Affirmed.