180 December 26, 2024 No. 956

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of D. B.,
a Person Alleged to have Mental Illness.
STATE OF OREGON,
*Respondent,*

*v.*

D. B.,
*Appellant.*

Clackamas County Circuit Court
24CC00263; A183516

Thanh H. Tran, Judge.

Submitted November 8, 2024.

Christopher J. O'Connor and Multnomah Defenders, Inc., filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Joanna Hershey, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Lagesen, Chief Judge, and Kamins, Judge.

KAMINS, J.

Reversed.

**KAMINS, J.**

Appellant appeals a 180-day civil commitment judgment raising two assignments of error: a procedural challenge to the timeliness of his commitment hearing and a merits challenge to the trial court's determination that he is mentally ill for purposes of ORS 426.005. Appellant acknowledges that he has a mental disorder but contends that the state failed to prove that, because of his mental disorder, he is unable to take care of his basic needs and will suffer serious harm in the near future. ORS 426.005(1) (f)(B). We agree with appellant and reverse.[1]

Unless reviewing *de novo* (which no party has requested), "[w]e review whether the state presented sufficient evidence to support appellant's civil commitment for legal error and are bound by the trial court's factual findings that are supported by evidence in the record." *State v. C. M. C.*, 301 Or App 206, 207, 454 P3d 30 (2019); *see also State v. B. B.*, 240 Or App 75, 77 n 2, 245 P3d 697 (2010) (declining to exercise *de novo* review in civil commitment appeal when parties did not request it or justify its application). We therefore "view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *State v. T. Y.*, 285 Or App 21, 22, 396 P3d 986 (2017) (internal quotation marks omitted).

In order to commit a "person with mental illness" on the basis of "basic needs," the state must prove that, because of a mental disorder, the person is "[u]nable to provide for basic personal needs that are necessary to avoid serious physical harm in the near future, and is not receiving such care as is necessary to avoid such harm." ORS 426.005(1)(f)(B). Basic needs include water, food, shelter, and necessary medical care. *State v. M. C. D.*, 304 Or App 775, 782-83, 467 P3d 84 (2020). "To satisfy that ['basic needs'] standard, the state must prove two things: (1) that the individual's inability to provide for their basic personal needs puts them at a

---

[1] Because we reverse on the merits, we decline to reach appellant's assignment of error challenging whether his commitment hearing was held within "five judicial days" from his mental health hold at the hospital. ORS 426.232(2).

nonspeculative risk of serious physical harm and (2) that the serious physical harm is likely to occur in the near future." *State v. P. D.*, 333 Or App 738, 742, 553 P3d 1063 (2024) (internal quotation marks omitted). That evidence must include a "nonvague estimation of appellant's expected rate of decline or decompensation." *C. M. C.*, 301 Or App at 212; *State v. R. L. M.*, 309 Or App 545, 551, 482 P3d 201 (2021) (observing the "basic principle" that the evidence in the record "must establish *how* soon the anticipated harm will likely occur if the appellant is released and is unable to provide for his or her basic needs" (emphasis in original)).

The state here presented evidence that appellant could suffer serious physical harm due to lack of shelter, dehydration, and an inability to take his diabetes medication. However, when looking at the record as a whole with "permissible derivative inferences," none of the evidence rose to the "nonvague" level of specificity required by our case law.

*Shelter:* With regards to shelter, there was evidence that appellant and his mother were in the process of being evicted, and, when asked about appellant's ability to locate subsequent shelter, the county's mental health evaluator testified she was worried that appellant would be houseless and exposed to the harsh winter elements because, due to his mental disorder, he might become trespassed from shelter facilities. But we have long held that houselessness on its own is not a *per se* basis for a "basic needs" commitment. *C. M. C.*, 301 Or App at 213 (citing *State v. L. B.*, 138 Or App 94, 99, 906 P2d 849 (1995)). More importantly, even assuming there was an inference of serious physical harm due to houselessness, there was no testimony about the likelihood that appellant would become houseless, or an estimated time frame in which any harm from houselessness would occur. *See State v. E. J. J.*, 308 Or App 603, 617, 479 P3d 1073 (2021) (reversing "basic needs" commitment notwithstanding evidence that appellant's landlord threatened to start eviction proceedings because no testimony on how houselessness would put appellant at nonspeculative risk of serious physical harm in the near future).

*Food and water:* Appellant also refused to drink water in the hospital without assistance. A "basic needs" commitment due to failure to eat food or drink water can be appropriate without evidence of immediate risk of harm because of the reasonable inference that a person who stops eating food will soon die. *State v. M. A. E.*, 299 Or App 231, 242, 448 P3d 656 (2019). But here, were appellant to be released, he would be returning home to live with his mother. There was no evidence that he had been or would be unlikely to drink water while at home with his mother. To the contrary, appellant's mother testified that he was able to obtain food on his own as well as when she provided it to him. *See State v. A. D. S.*, 258 Or App 44, 48, 308 P3d 365 (2013) (basic needs may be met through a person's own resources, or with the help of family and friends, and commitment is likely not justified if family or friends are available to assist). Nor was there evidence that appellant was dehydrated, or malnourished, or was losing weight. *See C. M. C.*, 301 Or App at 214 (overturning "basic needs" commitment and noting "the record contains no evidence that appellant is malnourished or would lose weight at a rate that would constitute 'serious physical harm in the near future'" (quoting ORS 426.005(1)(f)(B))).

*Diabetes medication*: The state presented evidence that appellant, who has lived with diabetes for years, entered the hospital with an elevated glucose level in the 270's, a dangerously high level, which only went down when hospital staff administered insulin.

We conclude that this record is too sparse to allow for a "basic needs" commitment under the assumption that appellant would soon suffer "serious physical harm" from his diabetes. Although it is inferable that appellant would not take medication if not committed, the medical evidence, in the main, did not address the specifics of appellant's condition (such as the type of his diabetes), and provided no basis to conclude that any risk to appellant was a near-term one, as distinct from a long-term risk resulting from mismanaged disease. *Compare State v. C. W.*, 333 Or App 400, 405-06, 553 P3d 577 (2024) (testimony from nurse practitioner that appellant would end up in ER in "like a month or so"

due to failure to take ulcerative colitis medication sufficient to establish appellant "likely to suffer that serious physical harm in the near future" (internal quotations omitted)) *with C. M. C.*, 301 Or App at 212-213 (overturning "basic needs" commitment where appellant's mental disorder interfered with ability to treat Hepatitis C when testimony reflected that medical problems *could* become life-threatening if not treated), *and R. L. M.*, 309 Or App at 553-54 (overturning "basic needs" commitment of appellant who would not take Afib medication because testimony showed that it was too unpredictable when the next atrial fibrillation event would occur). The state presented insufficient evidence to establish what appellant's medication needs were and, if unmet, when that deficiency would cause serious physical harm.

Reversed.