552 December 10, 2025 No. 1060

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of N. D.,
a Person Alleged to have Mental Illness.

STATE OF OREGON,
*Respondent,*

*v.*

N. D.,
*Appellant.*

Multnomah County Circuit Court
24CC06246; A185988

Monica M. Herranz, Judge.

Submitted November 10, 2025.

Joseph R. DeBin and Multnomah Defenders, Inc., filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Robert M. Wilsey, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

TOOKEY, P. J.

Affirmed.

**TOOKEY, P. J.**

Appellant appeals from a judgment of civil commitment. The trial court ordered that appellant be committed to the custody of the Oregon Health Authority for a period not to exceed 180 days, based on appellant being a "person with mental illness." ORS 426.130(1)(a)(C). Specifically, appellant was found "[u]nable to provide for basic personal needs that are necessary to avoid serious physical harm in the near future, and is not receiving such care as is necessary to avoid such harm." ORS 426.005(1)(f)(B). For the reasons discussed below, we affirm.

Neither party has requested that we review the record *de novo*, and we conclude that this is not an "exceptional" case that warrants *de novo* review. *See* ORAP 5.40(8)(c) (providing that the court will exercise its discretion to review *de novo* "only in exceptional cases"). Thus, "[w]e review a trial court's decision to continue the civil commitment for legal error." *State v. J. B.*, 337 Or App 34, 35, 562 P3d 3326 (2024) (internal quotation marks omitted). We do so "by viewing the evidence in the light most favorable to the state to determine whether any rational trier of fact, accepting reasonable inferences and credibility choices, could have found appellant" to be a mentally ill person subject to involuntary commitment. *State v. J. D. S.*, 242 Or App 445, 448, 263 P3d 1017 (2011).

A trial court may involuntarily commit a person if it determines by clear and convincing evidence that, because of a mental disorder, the individual is "[u]nable to provide for basic personal needs that are necessary to avoid serious physical harm in the near future[.]" ORS 426.005(1)(f)(B); ORS 426.130(1)(a)(C); ORS 426.307(6). "Serious physical harm" means "bodily harm that is serious enough that a person who suffers that harm is unsafe in the absence of commitment, treatment, or other amelioration of the physical condition." *State v. N. S.*, 306 Or App 140, 146, 472 P3d 818 (2020) (internal quotation marks omitted). The risk of serious physical harm "need not be immediate, so long as the person's mental disorder, and resulting lack of ability to provide for basic needs, puts the person at risk of serious physical harm in the near future." *Id*. (internal quotation marks and brackets omitted).

Appellant does not dispute the court's finding that she "suffers from a mental disorder," specifically bipolar disorder and unspecified psychosis, for purposes of ORS 426.005(1)(f). However, appellant argues that the record lacks legally sufficient evidence that appellant's inability to provide for her basic needs "puts [her] at a nonspeculative risk of serious physical harm and *** that the serious physical harm is likely to occur in the near future." *State v. P. D.*, 333 Or App 738, 742, 553 P3d 1063 (2024) (internal quotation marks omitted).

We have reviewed the record. The evidence in the record includes testimony from a nurse practitioner that appellant had "an infection that [had] gotten into the bone" after "somebody poked her finger with a needle," which required "antibiotic treatment," although "sometimes amputation is required." Appellant's orthopedist prescribed "[s]ix weeks of IV antibiotic treatment," of which she had completed "two weeks of antibiotic treatment" at the time of the hearing. Although appellant testified that she would continue to take IV antibiotics outside the hospital if released, the testifying nurse practitioner had "never heard of that being done" and did not believe that appellant could take care of her medical needs outside a hospital because "she needs *** IV antibiotics and she's homeless as far as I know." The nurse practitioner further testified that if appellant did not complete antibiotic treatment, the infection "could potentially spread up her finger and into her hand," requiring "[p]otential amputation" because if the infection "gets too far up into the bone, they have to amputate the bone."

Appellant testified that she did not think she would stay in the hospital for antibiotic treatment, because she believed that she may be able to take oral antibiotics or receive IV antibiotics outside the hospital. Appellant also testified that because she was "diagnosed with ADD and ADHD" she does "struggle with" taking her medications and had not been taking at least one of her prescribed medications. When asked if appellant would be able to care for her infected finger, appellant's adoptive mother testified that appellant "doesn't have the awareness and the ability to stick with something like that," and that "she just doesn't do

those kinds of things." A mental health examiner testified that the nexus between appellant's bipolar disorder and her "inability to care for a potentially lethal wound" was "clear," and testified that he "[did] not believe that she [could] care for herself" and "[did] believe that she [would] come to serious harm based on her infection within days."

In relationship to basic needs, we conclude that the evidence was legally sufficient to permit the trial court to determine that, absent commitment, appellant's serious infection constituted a nonspeculative risk of "serious physical harm in the near future" within the meaning of ORS 426.005(1)(f)(B). *See State v. N. G.*, 337 Or App 258, 260, 563 P3d 402 (2025) (evidence sufficient where, due to mental disorder, the appellant refused to take blood pressure medication posing a high risk for stroke or heart attack); *State v. M. A. E.*, 299 Or App 231, 241, 448 P3d 656 (2019) (evidence sufficient where treating provider testified that appellant "would decompensate within a matter of days to a week" without state intervention (internal quotation marks omitted)); *State v. C. K.*, 300 Or App 313, 316-18, 451 P3d 243 (2019) (evidence sufficient where, due to mental disorder, the appellant was unable to manage her ostomy site leading to a risk of serious infection within a week). We therefore affirm the trial court's judgment.

Affirmed.