138                 April 23, 2025                 No. 370

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of S. F. H.,
a Person Alleged to have Mental Illness.

STATE OF OREGON,
*Respondent,*

*v.*

S. F. H.,
*Appellant.*

Clackamas County Circuit Court
24CC02806; A184433

Kathie F. Steele, Judge.

Submitted March 21, 2025.

Liza Langford filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Julia Glick, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Jacquot, Judge, and Kistler, Senior Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

Appellant seeks reversal of a judgment committing him to the custody of the Oregon Health Authority (OHA) on the basis that, because he refused to eat or drink, he was unable to provide for his basic needs due to a mental disorder. In his sole assignment of error, appellant asserts that the state did not prove by clear and convincing evidence that, because of his mental disorder, he was "[u]nable to provide for basic personal needs that are necessary to avoid serious physical harm in the near future, and [was] not receiving such care as is necessary to avoid such harm." ORS 426.005(1)(f)(B). We conclude that the record supports the trial court's basic needs determination. Thus, we affirm.

Appellant does not dispute that he has a mental disorder that caused him to refuse to eat or drink;[1] rather, he argues only that the evidence is insufficient to support the trial court's determination that his mental disorder rendered him unable to provide for his basic needs. Appellant argues that the evidence was insufficient to show that he was at risk of serious physical harm in the near future or a nonspeculative timeline of when appellant would die from refusing to eat or drink.[2]

Unless reviewing *de novo* (which no party has requested), "[w]e review whether the state presented sufficient evidence to support appellant's civil commitment for legal error and are bound by the trial court's factual findings that are supported by evidence in the record." *State v.*

---

[1] Appellant was diagnosed with Catatonia and Major Depressive Disorder with Psychotic Features. Appellant's refusal to eat or drink was based upon paranoia that his food and water were being poisoned.

[2] We note that the standard is not whether appellant would die. Rather, it is whether appellant would suffer "serious physical harm," meaning "bodily harm that is serious enough that a person who suffers that harm is unsafe" without commitment or other treatment. *State v. N. S.*, 306 Or App 140, 146, 472 P3d 818 (2020).

On appeal, appellant also argues that "[h]e was still living with his wife. Even though she stated she wasn't able to be his caregiver any longer, that does not alleviate her of her responsibility to care for her spouse and deliver them back to the hospital if in fact they are in danger of starvation. He had a safety net in place as his wife would not stand by and let him die." Appellant did not preserve that argument and, regardless, our legal determination does not rest upon whether appellant had someone to call 9-1-1 each time he reached a life-threatening point of starvation and dehydration.

*C. M. C.*, 301 Or App 206, 207, 454 P3d 30 (2019). "[W]e view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *State v. E. J. J.*, 308 Or App 603, 604, 479 P3d 1073 (2021). To commit a "person with mental illness" on the basis of "basic needs," the state must prove that, because of a mental disorder, the person is "[u]nable to provide for basic personal needs that are necessary to avoid serious physical harm in the near future, and is not receiving such care as is necessary to avoid such harm." ORS 426.005(1)(f)(B). To satisfy that standard and commit a person based upon inability to provide for basic personal needs, such as food, water, and necessary medical care, "the state must prove two things: (1) that the individual's inability to provide for their basic personal needs puts them at a 'nonspeculative risk of serious physical harm' and (2) that the serious physical harm is likely to occur 'in the near future.'" *State v. P. D.*, 333 Or App 738, 742, 553 P3d 1063 (2024).

        Regarding the nonspeculative risk of serious physical harm, it is well-established that the refusal to eat or drink creates a risk of serious physical harm. *See, e.g.*, *State v. M. A. E.*, 299 Or App 231, 242, 448 P3d 656 (2019) (affirming commitment and explaining that it is "a matter of common knowledge, that a person who literally does not eat will soon be at risk of suffering serious physical harm"). Here, the record contains evidence that appellant's mental disorder caused him to believe his food and water were being poisoned, leading him to experience rapid and significant weight loss—15 percent of his body weight in the preceding two months. His lack of nutrition caused "Severe Protein Calorie Malnutrition" and "critically low" vitamin D levels, and he was "dehydrated to the point that it can be seen on laboratory values." He initially refused food and water in the hospital and required medical stabilization at points through intravenous fluids. Although he began eating for one day, he refused to eat again the next. Upon receiving involuntary medication, he began eating for a period of time and began to voluntarily take the medication given to him. But even while medicated, he would refuse food and water

intermittently, and his eating and drinking remained "not consistent" at the time of the hearing. *See State v. N. S.*, 306 Or App 140, 148-49, 472 P3d 818 (2020) (explaining that, among other evidence, the appellant's inability or refusal to obtain and consume adequate food supported her basic needs commitment and that "[i]t is common knowledge that a serious risk of harm can result from the inadequate intake of food and, here, appellant had lost weight and was not eating the food she was offered in the hospital").

Regarding whether the serious physical harm is "likely to occur in the near future," appellant argues that the evidence presented was insufficient to show a clear timeline of when the harm would occur. Our precedent establishes that, in assessing whether evidence is sufficient to establish a near-term risk of harm to an appellant, the evidence must "establish *how soon* the anticipated harm will likely occur." *State v. R. L. M.*, 309 Or App 545, 551, 482 P3d 201 (2021) (emphasis in original); *accord State v. C. W.*, 333 Or App 400, 406, 553 P3d 577 (2024) (same); *P. D.*, 333 Or App at 743-44 (same). However, a basic needs commitment due to failure to eat food or drink water can be appropriate without evidence of immediate risk of harm because of the reasonable inference that a person who stops eating food will soon die. *M. A. E.*, 299 Or App at 242 ("Although no witness testified as to the harm associated with an absence of food, the trial court could infer, as a matter of common knowledge, that a person who literally does not eat will soon be at risk of suffering serious physical harm—of a sort that compromises the person's ability to safely survive—in the near future.").

In this case, "the record, when viewed as a whole, established that appellant was already experiencing physical harm stemming from his malnourishment," and the court could infer that "without intervention, [appellant] would continue to deteriorate physically and, thus, that he was at risk of suffering serious physical harm in the near future." *P. D.*, 333 Or App at 743-44. Appellant's catatonia limited the self-reported information he provided, but when asked why he was hospitalized, he reported it was due to feeling "under the weather," and that he did not have concerns about how he had been feeling. In the two weeks

before his hospitalization, his wife called the county for assistance multiple times, but appellant refused assistance each time. Appellant had an extensive history of hospitalizations for refusal to eat or drink, beginning in 2021, and a history of medication and treatment noncompliance upon being released from care. Each time he was released he rapidly decompensated to the point of requiring hospitalization again. In fact, appellant had been discharged from a four-month hospitalization and residential treatment stay only two months before this hospitalization, but he failed to take his medication and engage with an outpatient treatment program after his release.

Viewed as a whole, the evidence of appellant's ongoing harm from his paranoia regarding his food and water being poisoned—including his rapid and significant weight loss, his diagnosis of "Severe Protein Calorie Malnutrition," "critically low" vitamin D levels, and "clinical" dehydration—along with his lack of insight into his condition, inconsistent eating and drinking even while taking medication, history of hospitalizations for refusal to eat or drink, and history of medication and treatment noncompliance once released causing rapid decompensation and hospitalization, was sufficient to establish the likelihood of near-term serious physical harm that ORS 426.005(1)(f)(B) requires. Accordingly, the record supports the trial court's basic needs determination.

Affirmed.